FIDELITY FINANCIAL CORPORA-
TION, Plaintiff-Appellant,

v.

FEDERAL HOME LOAN BANK OF SAN
FRANCISCO, Milton Feinerman, Presi-
dent of the Federal Home Loan Bank
of S.F., et al., Defendants-Appellees.

No. 84–2634.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 14, 1986.

Decided June 27, 1986.

Samuel Holmes, Angell, Holmes & Lea, San Francisco, Cal., for plaintiff-appellant.

Judd N. Poffinberger, Jr., Kirkpatrick & Lockhart, Pittsburg, Pa., for defendants-appellees.

Before GOODWIN, WALLACE, and ALARCON, Circuit Judges.

WALLACE, Circuit Judge:

Fidelity Financial Corporation appeals from the district court's final judgment in favor of the Federal Home Loan Bank of San Francisco (the Bank) in its action against the Bank for failure to provide regular credit advances. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I

Fidelity Financial Corporation is the parent corporation of Fidelity Savings and Loan Association (Fidelity), a state-chartered thrift institution.[1] The Bank is one of twelve regional Federal Home Loan Banks that form part of the Federal Home Loan Bank System, which was created by Congress in 1932 to provide a reliable source of funds to homebuyers. *See* Federal Home Loan Bank Act, 12 U.S.C. §§ 1421–1449 (the Bank Act). The Bank operates as the central credit facility for its member financial institutions. Primarily from funds obtained through the sale of the consolidated obligations of all Federal Home Loan Banks, the Bank is able to provide "advances"—loans made on the security of home mortgages—to its members. The Bank is wholly owned by its members, which are required by law to purchase and maintain a certain level of Bank stock. *See* 12 U.S.C. § 1426(c)(1). The Bank operates under the supervisory and regulatory authority of the Federal Home Loan Bank Board (the Bank Board), an independent federal agency. 12 U.S.C. § 1437.

Fidelity was a member institution of the Bank. In October 1979, Fidelity applied to the Bank for a $75 million regular short-term credit advance. Pursuant to its credit program adopted in 1975, the Bank denied the application on the ground that Fidelity was overcommitted (i.e., its loan commitments were not reasonably related to its anticipated inflow of funds). Instead, the Bank offered Fidelity its "Other Special Credit" option (OSC). Under OSC, a member could obtain funds for up to a year at interest rates equal to the Bank's regular rate plus 2%. A member was required to repay completely its outstanding OSC advances before it could again become eligible for regular credit. Fidelity applied for and obtained a $60 million OSC advance.

In December 1979, Fidelity requested reconsideration of its OSC classification. After the Bank determined that Fidelity was still ineligible, Fidelity continued to accept

substantial OSC advances. In February 1980, the Bank again determined that Fidelity did not qualify for regular credit, but accorded Fidelity a special waiver of the extra 2% OSC interest charge. Fidelity proceeded to obtain further advances totaling hundreds of millions of dollars. In October 1980, the Bank reinstated the extra 2% on future OSC advances, but in February 1981, the Bank suspended the 2% charge for all member borrowers, including Fidelity.

In March 1982, Fidelity reported a net loss of $57 million for the prior fiscal year. In response, depositors withdrew massive amounts from Fidelity—nearly $70 million in the first week of April alone. At this time, the Bank determined that Fidelity's outstanding OSC advances approached $1.4 billion. On April 9, the executive committee of the Bank's board of directors decided that the Bank would make no further advances to Fidelity. Four days later, the State of California placed Fidelity's assets in receivership.

Fidelity sued the Bank in district court, alleging, in part, that the Bank's denial of regular credit to Fidelity was in violation of procedural due process and of common law fiduciary duties owed Fidelity. On the Bank's motion to dismiss for failure to state a claim upon which relief could be granted, the district court dismissed the claim based on procedural due process; it declined, however, to dismiss the claim of breach of common law fiduciary duty. *Fidelity Financial Corp. v. Federal Home Loan Bank*, 589 F.Supp. 885 (N.D.Cal. 1983). After more than two years of discovery, the district court granted summary judgment for the Bank on the fiduciary duty claim, ruling that Fidelity had presented no evidence that the Bank's credit decisions were in bad faith or grossly negligent. Fidelity then moved to amend its complaint to allege breach of contract and breach of an implied covenant of good faith and fair dealing. The district court denied the motion.

---

**1.** For the sake of simplicity, we hereafter refer to Fidelity as if it were suing in its own behalf. We have no need to take further account of the separate corporate status of Fidelity Financial Corporation.

## II

Fidelity argues that the Bank's refusal to provide Fidelity regular credit advances violated its fifth amendment right to due process. The district court dismissed this claim for failure to state a claim upon which relief could be granted. The district court found two separate bases for this dismissal. First, it held that the Bank's actions did not constitute governmental action. Second, it determined that Fidelity had no protectible property interest in receiving regular credit advances. We review de novo the district court's dismissal for failure to state a claim upon which relief may be granted. *Guillory v. County of Orange*, 731 F.2d 1379, 1381 (9th Cir.1984). We may affirm only if it appears to a certainty that Fidelity would be entitled to no relief under any state of facts that could be proved. *Halet v. Wend Investment Co.*, 672 F.2d 1305, 1309 (9th Cir.1982).

### A.

The fifth amendment protects Fidelity against only federal governmental action. If, as the district court ruled, the Bank's actions did not constitute governmental action, Fidelity has not stated a claim upon which relief can be granted.

Whether the Bank's actions at issue constitute governmental action is not clear. On one hand, the Bank is privately owned and privately funded. It receives no government money, and its consolidated obligations are not guaranteed by the government. It is engaged in the business of making loans, which must be sound so that its obligations will be marketable. Its employees are not in the civil service, and it does not perform regulatory functions.

On the other hand, the Bank was created by a federal government agency, the Bank Board, to accomplish federal objectives and is closely regulated in order to promote these objectives. In addition, the Bank is subject to unusually extensive managerial supervision by the Bank Board: among other functions, the Bank Board appoints six of the Bank's fourteen directors, 12 U.S.C. § 1427(a), designates the Bank's chairman and vice chairman, 12 U.S.C. § 1427(g), and has the power to suspend or remove the Bank's directors, officers, employees, and agents. 12 U.S.C. § 1437.

Supreme Court precedent provides instructive guidance on this issue. The fact that a business is subject to extensive and detailed regulation does not alone render its actions governmental. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974) (*Jackson*). Rather, "the inquiry must be whether there is a sufficiently close nexus between the [government] and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the [government] itself." *Id.* at 351, 95 S.Ct. at 453. This nexus may be established by showing that the government exercised such coercive power or such significant encouragement that it is responsible for the specific private conduct challenged, or by showing that the private entity has exercised powers that are traditionally the exclusive prerogative of the government. *Blum v. Yaretsky*, 457 U.S. 991, 1004–05, 102 S.Ct. 2777, 2785–86, 73 L.Ed.2d 534 (1982).

Fidelity does not allege that the Bank Board (or any other governmental agency) coerced or encouraged the Bank's specific denials of regular credit; on the contrary, Fidelity contends that the Bank has failed to comply with Bank Board regulations. Nor does it seem that the Bank's business of making loans can be characterized as a traditionally exclusive sovereign activity. It therefore appears questionable whether the challenged Bank actions may be deemed governmental. *See, e.g., Warren v. Government National Mortgage Association*, 611 F.2d 1229, 1232–35 (8th Cir.) (GNMA foreclosure did not constitute governmental action, even though the GNMA was also wholly owned by the government), *cert. denied*, 449 U.S. 847, 101 S.Ct. 133, 66 L.Ed.2d 57 (1980); *Northrip v. Federal National Mortgage Association*, 527 F.2d 23, 30–33 (6th Cir.1975) (although the FNMA was subject to extensive regulatory and supervisory control, had five of its fifteen directors appointed by the government, and had many employees subject to

the civil service laws, its act of foreclosure did not constitute governmental action); *accord Roberts v. Cameron-Brown Co.,* 556 F.2d 356, 358–60 (5th Cir.1977). *But cf. Rust v. Johnson,* 597 F.2d 174, 177–78 (9th Cir.) (suggesting that Federal Home Loan Banks may be federal instrumentalities for supremacy clause purposes), *cert. denied,* 444 U.S. 964, 100 S.Ct. 450, 62 L.Ed.2d 376 (1979); *Fahey v. O'Melveny & Myers,* 200 F.2d 420, 446, 454 (9th Cir.1952) (ruling, pre-*Jackson,* that Federal Home Loan Banks are "governmental banking agencies" in the context of determining that the banks do not have due process rights against the government), *cert. denied,* 345 U.S. 952, 73 S.Ct. 866, 97 L.Ed. 1374 (1953). We need not resolve this issue, however, for we find that the district court's second ground clearly disposes of Fidelity's procedural due process claim.

### B.

■ Fidelity argues that it had a protectible property interest in receiving advances under the Bank's regular credit terms. To have a property interest in receiving regular credit advances, Fidelity must show that existing rules and understandings gave Fidelity a "legitimate claim of entitlement" to such advances. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Where the decision to confer a benefit is unconstrained by " 'particularized standards or criteria,' " no entitlement exists. *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983), *quoting Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 467, 101 S.Ct. 2460, 2466, 69 L.Ed.2d 158 (1981) (Brennan, J., concurring); *see Baumann v. Arizona Department of Corrections,* 754 F.2d 841, 845 (9th Cir.1985); *Jacobson v. Hannifin,* 627 F.2d 177, 180 (9th Cir.1980); *City of Santa Clara v. Andrus,* 572 F.2d 660, 676 (9th Cir.), *cert. denied,* 439 U.S. 859, 99 S.Ct. 177, 58 L.Ed.2d 167 (1978).

Fidelity does not deny that it was ineligible for regular credit advances under the terms of the Bank's established credit program. Instead, it argues that the Bank Act and Bank Board regulations conferred on Fidelity an entitlement to receive regular credit advances.

■ The Bank Act does not impose particularized standards or criteria that significantly constrain the Bank's discretion to deny or condition advances. On the contrary, the Bank Act clearly reposes broad discretion in the Bank. Under section 9 of the Bank Act, Fidelity is merely "entitled *to apply* ... for advances"; the Bank "may *at its discretion* deny any such application, or, subject to the approval of the board, may grant it on such conditions as the [Bank] may prescribe." 12 U.S.C. § 1429 (emphasis added). Similarly, section 7(j) simply requires that the Bank's board of directors exercise its discretion prudently in making advances:

> Such board of directors shall administer the affairs of the bank fairly and impartially and without discrimination ... and shall ... extend to each institution ... such advances as may be made safely and reasonably with due regard for the claims and demands of other institutions, and with due regard to the maintenance of adequate credit standing for the Federal Home Loan Bank and its obligations.

12 U.S.C. § 1427(j).

■ Fidelity's alleged entitlement to regular credit advances is equally unsupported by the Bank Board regulation then governing advances. *See* 12 C.F.R. § 531.1 (1982). This regulation highlighted the Bank's discretion:

> Banks *may* make advances to members, subject to regulations and restrictions the Board may prescribe. *Access by members to advances is a privilege* which may be limited under the Act.

12 C.F.R. § 531.1(a) (1982) (emphasis added).

We therefore conclude that the Bank's discretion was so unconstrained by specific limiting criteria that it did not give rise to a property interest in receiving regular credit advances. Therefore, even assuming that the Bank's actions may be deemed governmental, we hold that the district court properly dismissed the procedural due process claim.

## III

On the Bank's motion to dismiss for failure to state a claim upon which relief could be granted, the district court held that Fidelity had a federal common law claim for breach of fiduciary duty. The court ruled that the Bank's officers and directors owed fiduciary duties to Fidelity as shareholder and that the Bank was derivatively liable to Fidelity. In later granting summary judgment for the Bank on this claim, the court ruled that Fidelity had failed to present any evidence that the Bank's officers and directors had acted in bad faith or in a grossly negligent manner, and that the "business judgment" rule therefore insulated the Bank from liability.

Fidelity argues on appeal that the "business judgment" rule does not apply and that the Bank should bear the burden of proving that its dealings with Fidelity were fair. The Bank, supported by amicus briefs from the Bank Board and the eleven other Federal Home Loan Banks, argues that the Bank's officers and directors did not owe Fidelity any federal common law fiduciary duty in determining whether to make loans to it. It further argues that if a fiduciary duty was owed, the district court properly applied the "business judgment" rule.

■■■ We review de novo the district court's summary judgment. *Lojek v. Thomas*, 716 F.2d 675, 677 (9th Cir.1983). We must determine whether there is any genuine issue of material fact and whether the substantive law was correctly applied. *Id.* We may affirm the district court on a ground not selected by the district judge so long as the record fairly supports such an alternative disposition of the issue. *See City of Las Vegas v. Clark County*, 755 F.2d 697, 701 (9th Cir.1985).

■■■ We need not reach the question of whether the Bank's actions measured up to a federal common law fiduciary duty, because we agree with the Bank that Fidelity had no such claim under federal common law. The instances in which federal courts may formulate federal common law are "few and restricted." *Wheeldin v. Wheeler*, 373 U.S. 647, 651, 83 S.Ct. 1441, 1444,

10 L.Ed.2d 605 (1963). "[A]bsent some congressional authorization to formulate substantive rules of decision, federal common law exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases." *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641, 101 S.Ct. 2061, 2067, 68 L.Ed.2d 500 (1981) (footnotes omitted).

■■■ The district court and Fidelity do not identify, and we do not perceive, any congressional authorization to federal courts to formulate substantive rules of decision governing the Bank's liability. In addition, this case does not implicate any of the narrow areas in which a "federal rule of decision is 'necessary to protect uniquely federal interests.'" *Id.* at 640, 101 S.Ct. 2067, *quoting Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 426, 84 S.Ct. 923, 939, 11 L.Ed.2d 804 (1964). Only the rights and obligations of two private corporations are at stake. While there is a general federal interest in the functioning of the Federal Home Loan Bank System, this interest is insufficient to warrant formulation of federal common law in this case. *Cf. id.* at 642, 101 S.Ct. at 2067 (federal interest in vindication of antitrust rights does not warrant creation of federal common law where dispute does not involve duties of federal government or other uniquely federal interest); *Bank of America National Trust & Savings Association v. Parnell*, 352 U.S. 29, 33–34, 77 S.Ct. 119, 121–122, 1 L.Ed.2d 93 (1956) (federal interest in government paper is too remote to warrant formulation of federal common law where dispute is purely between private parties). We therefore reject Fidelity's challenge to the entry of summary judgment in favor of the Bank on Fidelity's claim of breach of a federal common law fiduciary duty.

## IV

■■■ After the district court announced its decision to grant summary judgment for the Bank, Fidelity sought leave to file a

fourth amended complaint alleging that the Bank's credit decisions constituted a breach of contract and a breach of an implied covenant of good faith and fair dealing. The district court, finding that the new claims merely restated earlier claims and that permitting amendment would impose a prejudicial burden on the Bank, denied the motion. We review for abuse of discretion the denial of a motion for leave to amend. *Klamath-Lake Pharmaceutical Association v. Klamath Medical Service Bureau,* 701 F.2d 1276, 1292 (9th Cir.), *cert. denied,* 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983).

 The district court's discretion to deny leave to amend is particularly broad where the court has already given the plaintiff an opportunity to amend his complaint. *Mir v. Fosburg,* 646 F.2d 342, 347 (9th Cir.1980). Moreover, we agree with the district court that Fidelity was simply restating its prior claims under new labels. The factual bases of the claims were known to Fidelity long before. Further, the district court found that the Bank would be prejudiced if the motion were granted. Under these circumstances, the district court did not abuse its discretion in denying the motion.

AFFIRMED.