**Ronnie O. KITCHENS, et al.,
Plaintiffs-Appellants,**

v.

**Otis R. BOWEN, et al.,
Defendants-Appellees.**

No. 86–3994.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 8, 1987.

Decided Aug. 20, 1987.

Philip F. Schuster, II, Roger F. Dierking, Portland, Or., for plaintiffs-appellants.

Robert M. Atkinson, Salem, Or., for defendants-appellees.

Felicia L. Chambers, U.S. Dept. of Justice, Washington, D.C., for federal-appellee.

Before KILKENNY, GOODWIN and FERGUSON, Circuit Judges.

KILKENNY, Senior Circuit Judge:

This appeal arises out of a challenge to the constitutionality of a social welfare program that does not mandate immediate notice to the putative fathers of children whose mothers apply for benefits under that program. The questions presented for review are whether the district court erred by dismissing the complaint as against the federal defendant for lack of any federal action, and against the state defendants by virtue of the doctrine of abstention. For the reasons set forth below, we affirm.

## FACTS AND PROCEEDINGS BELOW

Appellants are a group of seven men who, in applications submitted for benefits under the Aid to Families with Dependent Children ("AFDC") program,[1] were identified by the mothers of children born out of wedlock as the children's fathers. At the time of their filing the underlying action, appellants were all defendants in Oregon state court proceedings brought by the state to establish paternity and, pursuant to the AFDC applicants' assignment of support rights to the state, to collect support obligations. In suing the Secretary of the United States Department of Health and Human Services ("Secretary" or "federal defendant"), the Administrator of the Adult and Family Services Division of the Oregon Department of Human Resources, and the Administrator of the Support Enforcement Division of the Oregon Department of Justice ("state defendants"), appellants have alleged that the federal regulations governing the administration of the AFDC program are unconstitutional because they do not provide for notice to putative fathers at the time when mothers of children born out of wedlock apply for AFDC assistance.

---

1. Pub.L. No. 271, §§ 401 et seq., 49 Stat. 627 et seq., codified as Title IV–A of the Social Security Act at 42 U.S.C. §§ 601 et seq.

The district court dismissed appellants' claim against the federal defendant, both because the complaint failed to allege federal action on the part of that defendant sufficient to warrant the exercise of federal subject matter jurisdiction over the claim, and because the complaint failed to state a claim upon which relief could be granted. The claim against the state defendants was also dismissed under the provisions of the so-called *Younger* abstention doctrine.[2] It is from the dismissal of their complaint that appellants have timely appealed.

## STANDARD OF REVIEW

We review *de novo* a district court's dismissal of a complaint for lack of subject matter jurisdiction. *Abrams v. Commissioner,* 814 F.2d 1356, 1357 (CA9 1987). Similarly, we review *de novo* a district court's decision to dismiss a complaint for failure to state a claim upon which relief can be granted. *Newman v. Universal Pictures,* 813 F.2d 1519, 1521 (CA9 1987). Finally, we review *de novo* a dismissal based on the doctrine of abstention. *Fresh Int'l Corp. v. Agricultural Labor Relations Bd.,* 805 F.2d 1353, 1356 (CA9 1986).

## DISCUSSION

### 1. *Background*

At the heart of this appeal lies the scheme of cooperative federalism existing between the state and federal governments under the AFDC program. The avowed purpose of this program is to promote the benefits of family life by encouraging the care of, *inter alia,* fatherless,[3] needy children, either in their own homes or in those of relatives, by providing financial assistance to the children's mothers or other relatives. 42 U.S.C. § 601.

In a nutshell, the AFDC program works as follows. Financial assistance to needy children is provided by state agencies, which are in turn eligible for federal matching funds if their assistance plans comply with both the Social Security Act's relevant statutory requirements and the regulations implementing the program. For example, a state's plan must provide for prompt notice to the state's child support collection agency upon the furnishing of AFDC assistance to a child who has been deserted or abandoned by a parent, including a child born out of wedlock, without regard to whether the paternity of that child has been established. 42 U.S.C. § 602(a)(11). In addition, and as a condition of eligibility, the AFDC applicant must assign to the state any rights to support she may have from any other person and which have accrued at the time the assignment is executed. 42 U.S.C. § 602(a)(26)(A). Also, the applicant is generally required to cooperate with the state, both in establishing the paternity of a child born out of wedlock and in obtaining support therefor. 42 U.S.C. § 602(a)(26)(B).

The state must have in effect a plan to establish paternity, locate absent parents, and obtain child and spousal support. 42 U.S.C. § 602(a)(27). Similarly, the state must provide child support enforcement services with respect to all AFDC recipients. 42 U.S.C. § 654(4). Finally, support rights assigned to the state under the AFDC program constitute obligations owed to the state and are collectable by the state under relevant state and local processes. 42 U.S.C. § 656(a)(1).

### 2. *Federal Jurisdiction*

The gravamen of appellants' complaint against the Secretary is that, in promulgating the regulations governing the administration of the AFDC program, the Secretary failed to require that, at the time mothers of children born out of wedlock apply for AFDC benefits, putative fathers be given notice of the filings of such applications and an opportunity for a hearing. As a result, appellants argue, they had no

---

**2.** *Younger v. Harris,* 401 U.S. 37, 44–45, 91 S.Ct. 746, 750–51, 27 L.Ed.2d 669 (1971).

**3.** The AFDC program "offers welfare payments to families in which the father is dead, absent, disabled or, at the State's option, unemployed." S.Rep. No. 93–1356, 93rd Cong., 2nd Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 8133, 8146.

opportunity to contest the level of AFDC assistance provided and, by virtue of the mothers' assignment of support rights to the state, appellants now face substantial support obligations to the state which accrued during the prenotice period.

The Secretary contends that dismissal was proper because appellants failed to allege and show any federal action. The AFDC statute and regulations leave the responsibility for formulating specific procedures for determining paternity and support obligations to the individual states; therefore, the Secretary asserts, if appellants were deprived of any constitutional rights, the responsibility for that deprivation must fall on the shoulders of the state defendants.

In addressing this issue, we note at the outset that "[t]he standards utilized to find federal action for purposes of the Fifth Amendment are identical to those employed to detect state action subject to the strictures of the Fourteenth Amendment." *Geneva Towers Tenants Org. v. Federated Mortgage Investors*, 504 F.2d 483, 487 (CA9 1974); *see also Fidelity Fin. Corp. v. Federal Home Loan Bank*, 792 F.2d 1432, 1435 (CA9 1986) (applying principles of state action cases to federal action issue), *cert. denied,* — U.S. —, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987). Accordingly, this court turns now to an examination of the leading state action cases.

The relevant standards are set forth in the brace of cases, *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) and *Rendell-Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). Those decisions make clear that, even though the state defendants here were subject to federal regulations in administering the AFDC program, that fact alone does not establish federal action. *Blum*, 457 U.S. at 1004, 102 S.Ct. at 2785; *Rendell-Baker*, 457 U.S. at 841, 102 S.Ct. at 2771. Appellants must show that

"'there is a sufficiently close nexus between the [federal government] and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the [federal government] itself.' [Citation omitted] The purpose of this requirement is to assure that constitutional standards are invoked only when it can be said that the [federal government] is *responsible* for the specific conduct of which the plaintiff complains."

*Blum,* 457 U.S. at 1004, 102 S.Ct. at 2785 (*quoting Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974) (emphasis in original)); *accord, Fidelity Fin.*, 792 F.2d at 1435. Appellants may establish this required nexus only

"by showing that the [federal] government exercised such coercive power or such significant encouragement that it is responsible for the specific ... conduct challenged, or by showing that the [state defendants] ha[ve] exercised powers that are traditionally the exclusive prerogative of the [federal] government."

*Id.* (citing *Blum*, 457 U.S. at 1004–1005, 102 S.Ct. at 2785–86).

As already indicated, the specific conduct challenged by appellants here is the failure to provide for notice and an opportunity for a hearing at the so-called Title IV-A, or AFDC application, stage. While the federal regulations make no provision for such notice and hearing, they do not prohibit the states from granting such rights, either. Indeed, the entire AFDC scheme is designed to leave the states responsible for the specific procedures to be employed, subject only to the broad parameters outlined in the federal statutes and regulations. *See, e.g.,* 45 C.F.R. §§ 302.31, 302.-50, 303.4, and 303.5 (requiring states to establish paternity and secure support obligations in accordance with state law).

The State of Oregon was and is free to adopt procedures to give timely notice to putative fathers, and there is no evidence that its failure to do so was compelled or encouraged in any way by the Secretary. Nor is it significant that the Secretary did not take action in the face of the state's failure to provide for such notice: "Mere approval of or acquiescence in the initiatives of [the state defendants] is not sufficient to justify holding the [Secretary] re-

sponsible for those initiatives...." *Blum*, 457 U.S. at 1004–05, 102 S.Ct. at 2785–86.

Finally, the realm of domestic relations is and has been traditionally governed by state law. *Lehr v. Robertson*, 463 U.S. 248, 256, 103 S.Ct. 2985, 2990, 77 L.Ed.2d 614 (1983). Accordingly, appellants' argument that there is a compelling need for national uniformity in this area that overrides any state interests fails; there is nothing in the statutory scheme to indicate a "clear and manifest" intent on the part of Congress to preempt the entire field. *Hillsborough County v. Automated Med. Labs.*, 471 U.S. 707, 716, 105 S.Ct. 2371, 2377, 85 L.Ed.2d 714 (1985). The claim against the federal defendant was properly dismissed.

### 3. *Younger Abstention*

At the time appellants brought this action, they were all defendants in Oregon state court proceedings brought by the state to establish paternity and collect support obligations on behalf of children who were receiving or had received AFDC benefits. In the underlying action, appellants sought a declaratory judgment that the federal AFDC regulations were unconstitutional and an order restraining the state defendants from, *inter alia*, collecting all past and future support obligations. As indicated above, the district court dismissed appellants' claim against the state defendants based on the principles espoused in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

While the *Younger* case involved criminal proceedings, "[C]oncerns of comity and federalism counsel restraint in civil proceedings as well, when important state interests are at stake." *Fresh Int'l Corp. v. Agricultural Labor Relations Bd.*, 805 F.2d at 1356; *accord, Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982) ("[t]he policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved."). Thus, "[A]bstention is appropriate in favor of a state proceeding if (1) the state proceed-

ings are ongoing; (2) the proceedings implicate important state interests; and (3) the state proceedings provide an adequate opportunity to raise federal questions."

*Fresh Int'l*, 805 F.2d at 1357–58 (*citing Middlesex, supra*).

Appellants argue that the first prong of the above three-part test has not been met because four of the appellants' state court paternity proceedings are no longer "ongoing". This argument fails for two reasons.

First, Oregon law subjects these appellants to ongoing child support proceedings that continue until the applicable support orders are either vacated or dismissed. Or. Rev.Stats. §§ 107.135, 109.103. Until then, either party to those proceedings can file a motion requesting that the state court modify the support order. *Id.*

Second, *Fresh Int'l* suggests that the critical question is not whether the state proceedings are still "ongoing", but whether "the state proceedings were underway before initiation of the federal proceedings." 805 F.2d at 1358. There is no dispute that all of the appellants were already defendants in the state court proceedings prior to the commencement of the federal action.

Appellants next contend that the state interests involved are not sufficiently important to justify *Younger* abstention. In support of this position they first argue, citing *Miofsky v. Superior Court*, 703 F.2d 332 (CA9 1983), that this court is reluctant to extend the *Younger* doctrine to civil litigation, particularly in civil rights suits.

It is true that, prior to *Fresh Int'l*, this court was somewhat hesitant to expand *Younger* beyond criminal or quasi-criminal contexts. *See, e.g., Playtime Theaters v. City of Renton*, 748 F.2d 527, 533 (CA9 1984), *rev'd on other grounds*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986); *Goldie's Bookstore v. Superior Court*, 739 F.2d 466, 469–70 (CA9 1984). However, *Fresh Int'l* recognizes that the earlier view was too restrictive and that abstention is warranted whenever an important state in-

terest is implicated. 805 F.2d at 1359–60. Moreover, the Supreme Court held in *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) that a state's interests in "administering its public-assistance programs" and "safeguarding the fiscal integrity of those programs" were sufficiently important to warrant application of the *Younger* abstention doctrine. *Id.* at 444, 97 S.Ct. at 1918.

 Appellants' further argument that the interests of the State of Oregon are outweighed by the need for national uniformity in AFDC procedures is no more persuasive in this context than it was with respect to their claim against the federal defendant, above. Similarly, appellants' argument that the claim against the state defendants should have been retained under the pendent jurisdiction doctrine of *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ignores the underlying rationale of that decision: Appellants' claim against the federal defendant was properly dismissed, and *Gibbs* states that "if the federal claims are dismissed before trial ... the state claims should be dismissed as well." *Id.* at 726, 86 S.Ct. at 1139.

Finally, there is no merit to appellants' argument that they do not (or did not) have an adequate opportunity to raise their federal constitutional claims in the state court proceedings. Three of the appellants did in fact present their constitutional claims in the state court and prevailed thereon. The state trial court determined that the state's failure to notify these appellants at the AFDC application stage denied them their rights to due process and equal protection under the constitutions of both the United States and Oregon.[4]

As to those appellants whose paternity proceedings have terminated, or those who failed to raise their constitutional claims in state court, the relevant question is whether they *"could have* presented" those claims to the state court. *Fresh Int'l*, 805 F.2d at 1362 (emphasis in original). "All that *Middlesex* requires is an opportunity to present the federal issue...." *Id.* (em-

phasis in original); *see also Juidice v. Vail*, 430 U.S. 327, 337, 97 S.Ct. 1211, 1218, 51 L.Ed.2d 376 (1977) (same). The success of the three appellants mentioned above belies any argument that the remaining appellants did not themselves have the opportunity to raise the constitutional issues in state court. The district court therefore did not err in dismissing appellants' claim against the state defendants.

### CONCLUSION

For the reasons set forth above, the decision of the district court is hereby AFFIRMED.

---

**4.** Those decisions are now before the Oregon Court of Appeals.