**In re SECURE COMPUTING COR-PORATION SECURITIES LIT-IGATION.**

No. C 99–01927 CW.

United States District Court,
N.D. California.

Aug. 21, 2001.

982

Robert J. Dyer, III, Jeffrey A. Berens, Kip B. Shuman, Dyer & Shuman LLP, Denver, CO, Julie Goldsmith, Cohen Milstein Hausfeld & Toll, PLLC, Seattle, WA, Dyer Donnelly, Denver, CO, Reed R. Kathrein, Milberg Weiss Bershad Hynes & Lerach, LLP, San Francisco, CA, Lori G. Feldman, Milberg Weiss Bershad Hunes & Lerach, Seattle, WA, Alan Schulman, Bernstein Litowitz Berger & Grossmann LLP, San Diego, CA, William S. Lerach, Darren J. Robbins, David C. Walton, Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, CA, for Myron Goldstein.

Jules Brody, Stull Stull & Brody, New York City, Kip B. Shuman, Dyer & Shuman LLP, Denver, CO, Michael D. Braun, Patrice Bishop, Stull Stull & Brody, Los Angeles, CA, Julie Goldsmith, Cohen Milstein Hausfeld & Toll, PLLC, Seattle, WA, Harvey Greenfield, Law Firm of Harvey Greenfield, New York City, for Herbert Silverberg.

Kip B. Shuman, Dyer & Shuman LLP, Denver, CO, Julie Goldsmith, Cohen Milstein Hausfeld & Toll, PLLC, Seattle, WA, Steven J. Toll, Cohen Milstein Hausfeld & Toll, Seattle, WA, Reed R. Kathrein, Milberg Weiss Bershad Hynes & Lerach, LLP, San Francisco, CA, Lori G. Feldman, Milberg Weiss Bershad Hunes & Lerach, Seattle, WA, Alan Schulman, Bernstein Litowitz Berger & Grossmann LLP, San Diego, CA, William S. Lerach, Darren J. Robbins, David C. Walton, Milberg Weiss

Bershad Hynes & Lerach LLP, San Diego, CA, for William Preiner.

Kip B. Shuman, Dyer & Shuman LLP, Denver, CO, Jordan L. Lurie, Elizabeth P. Lin, Weiss & Yourman, Los Angeles, CA, Julie Goldsmith, Cohen Milstein Hausfeld & Toll, PLLC, Seattle, WA, Joseph H. Weiss, Weiss & Yourman, New York City, for Charles McInnis.

Kevin M. Prongay, Jon W. Borderud, Los Angels, CA, Kip B. Shuman, Dyer & Shuman LLP, Denver, CO, Julie Goldsmith, Cohen Milstein Hausfeld & Toll, PLLC, Seattle, WA, Reed R. Kathrein, Milberg Weiss Bershad Hynes & Lerach, LLP, San Francisco, CA, Alison M. Tattersall, David R. Stickney, Milberg Weiss Bershad Hynes & Lerach LLP, San Francisco, CA, Lori G. Feldman, Milberg Weiss Bershad Hunes & Lerach, Seattle, WA, William S. Lerach, Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, CA, for Melvin Freedenberg.

Kip B. Shuman, Dyer & Shuman LLP, Denver, CO, Karen M. Hanson, Richard A. Lockridge, Lockridge Grindal Nauen & Holstein PLLP, Minneapolis, MN, Julie Goldsmith, Cohen Milstein Hausfeld & Toll, PLLC, Seattle, WA, Reed R. Kathrein, Milberg Weiss Bershad Hynes & Lerach, LLP, San Francisco, CA, Alison M. Tattersall, David R. Stickney, Milberg Weiss Bershad Hynes & Lerach LLP, San Francisco, CA, Lori G. Feldman, Milberg Weiss Bershad Hunes & Lerach, Seattle, WA, William S. Lerach, Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, CA, for George H. Rosenquist.

Steven M. Schatz, Gidon M. Caine, Catherine H. Winterburn, Theodore Allegaert, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, for Secure Computing Corp., Jeffrey H. Waxman, Timothy P. McGurran, Patrick Regester, Gary D. Taggart, Howard Smith, Christine Hughes.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

WILKEN, District Judge.

In this class action for securities fraud, Plaintiffs allege that Defendants knowingly misrepresented to the investment community that Secure Computing Corporation was growing and increasing its earnings during the class period. Defendants move to dismiss Plaintiffs' first amended complaint (FAC) for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs oppose the motion. A hearing on the motion was held on February 9, 2001. Having considered the papers filed by the parties and oral argument on the motion, the Court DENIES Defendants' motion to dismiss (Docket No. 59).

## BACKGROUND

Defendant Secure Computing Corporation designs, develops, markets and sells security products and services for computer networks. *See* FAC at ¶ 3. Individual Defendants Jeffrey H. Waxman, Timothy P. McGurran, Patrick Regester, Gary D. Taggart, Howard Smith and Christine Hughes were officers of Secure and members of its executive committee during the relevant time period. *See id.* at ¶¶ 19–20. The Court found in its June 14, 2000 Order granting dismissal of Plaintiffs' Corrected Consolidated Complaint (CCC) that for purposes of pleading all six individual Defendants qualified as controlling persons and that Plaintiffs had sufficiently plead, both on a theory of direct liability for their statements and on a "group published information" theory, the collective liability of the individual Defendants for the false statements of the company.

Plaintiffs are an uncertified class composed of all individuals who purchased or otherwise acquired Secure's common stock during the class period of November 10, 1998 through March 31, 1999. Plaintiffs contend that, motivated by a "highly unusual compensation scheme" that rewarded short-term increases in the company's stock price and through "hype and false financials," Defendants violated §§ 10(b) and 20(a) of the Securities and Exchange Act of 1934 and Securities and Exchange Commission (SEC) Rule 10b–5. *See* FAC ¶ 2.

Plaintiffs allege that Defendants illegally caused the stock price to rise by improperly and prematurely recognizing revenue in violation of Generally Accepted Accounting Principles (GAAP) on an uncompleted contract with the National Security Agency (NSA), thereby overstating Secure's 4Q98 financial results, and by making other false representations through interviews, press releases, statements to analysts and investors, and an SEC filing that Secure was solid financially and that demand for Secure's products was high and growing. Plaintiffs allege that by elevating Secure's stock price above certain levels in the fourth quarter of 1998 (4Q98) and the first quarter of 1999 (1Q99), Defendants reaped large financial benefits, both through accelerated vesting of stock options and through sales of recently acquired shares. *See* FAC ¶ 6, 26.

Plaintiffs assert that, in reality, Secure's business was weakening by the 3Q98. *See* FAC ¶¶ 30, 45–46, 48–49, 53. Plaintiffs allege that Defendants knew Secure's business was weakening and misrepresented Secure's financial condition during the 4Q98 and 1Q99 in order to benefit not only from the sale of stock during those periods, but also from the increased vesting that would occur if certain stock prices were achieved. *See* FAC ¶¶ 26, 28, 118. Plaintiffs assert that these false and misleading statements caused Secure's stock to rise through the class period and then collapse when the true nature of Secure's financial status was publicly revealed. *See* FAC ¶¶ 12, 27, 87–90.

In an order issued on June 14, 2000, this Court dismissed Plaintiffs' CCC, with leave to amend. The Court found that Plaintiffs had failed to plead their allegations of false and misleading statements with the particularity required by the Private Securities Litigation Reform Act of 1995 (PSLRA), which amended the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78111. The Court found that when pleading facts on information and belief Plaintiffs had failed to plead all relevant facts on which that belief was founded. The Court did not determine whether Plaintiffs had plead scienter with the requisite particularity because that element was not ripe for determination due to Plaintiffs' failure to plead their allegations of false and misleading statements with particularity.

Defendants now argue that: (1) the FAC fails to allege with particularity specific facts demonstrating that statements were false when made, (2) the FAC fails to allege with particularity specific facts giving rise to a " 'strong inference' that statements were made with actual knowledge that they were false;" (3) the FAC fails to allege specific facts showing Defendants' liability for third-party statements; (4) the FAC fails to provide sufficient support for allegations made on information and belief; (5) certain statements are immune from liability under the PSLRA's "safe harbor" for forward-looking statements and the bespeaks caution doctrine; and (6) the FAC fails to allege any basis of liability for Messrs. Regester, Taggart, and Smith and Ms. Hughes. *See* Defendant's Motion at 1.

## DISCUSSION

### I. Legal Standard

#### A. Rule 12(b)(6)

A motion to dismiss for failure to state a claim will be denied unless it appears that the plaintiff can prove no set of facts which would entitle it to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Fidelity Fin. Corp. v. Federal Home Loan Bank of San Francisco*, 792 F.2d 1432, 1435 (9th Cir.1986). Dismissal of a complaint can be based on either the lack of a cognizable legal theory or the lack of sufficient facts alleged under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't.* 901 F.2d 696, 699 (9th Cir.1988).

#### B. Securities Fraud

■ In 1995, Congress enacted the Private Securities Litigation Reform Act of 1995 (PSLRA), Pub.L. No. 104–67, which amends the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78111. Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful for any person to "use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b); *see also* 17 C.F.R. ¶ 240.10b–5 (Rule 10b–5). To state a claim under § 10(b), a plaintiff must allege: "(1) a misrepresentation or omission of material fact, (2) reliance, (3) scienter, and (4) resulting damages." *Paracor Finance, Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1157 (9th Cir.1996); *see also McCormick v. Fund Am. Cos.*, 26 F.3d 869, 875 (9th Cir.1994).

■ Plaintiffs must plead securities fraud with particularity, pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1543 (9th Cir.1994) (en banc).

Further, although Rule 9(b) does not require that scienter be plead with particularity, *see Concha v. London*, 62 F.3d 1493, 1503 (9th Cir.1995), the PSLRA does. *See* 15 U.S.C. § 78u–4(b)(2).

■ Rule 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong". *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). The PSLRA requires that the complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1).

Except with respect to allegations made on information and belief, the PSLRA pleading standard for allegations about the circumstances constituting fraud is the same as the Ninth Circuit's pre-PSLRA standard. Before the enactment of the PSLRA, plaintiffs were already required to plead specifically the time, place and nature of the alleged misrepresentations, *see Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir.1987), and to explain why each alleged misstatement or omission was false or misleading when made, *see GlenFed*, 42 F.3d at 1549.

The PSLRA's requirement regarding allegations plead on information and belief is somewhat stricter than the Ninth Circuit's pre-PSLRA standard. For allegations made on information and belief, pre-PSLRA case law in the Ninth Circuit required "a statement of the facts upon

which the belief is founded," *see Wool,* 818 F.2d at 1439, but did not expressly require that plaintiffs specifically plead *all* facts upon which the belief was based. The PSLRA, however, requires exactly that. *See* 15 U.S.C. § 78u–4(b)(1).

## II. First Amended Complaint

■ Plaintiffs have reorganized and expanded their complaint from the prior version this Court dismissed on June 14, 2000. The FAC is better organized, less confusing, and more straightforward than the CCC. Where the CCC was organized into two distinct sections entitled, "FALSE AND MISLEADING STATEMENTS" and "SECURE COMPUTING'S FALSE FINANCIAL REPORTING DURING THE CLASS PERIOD," the FAC now first discusses in detail the NSA contract on which Plaintiffs allege Defendants improperly recognized revenue, then identifies and discusses separately each allegedly false and misleading statement, including financial statements, made by Defendants during the class period and the reasons for their falsity, and finally pleads additional facts supporting a "strong inference" of scienter, including stock sales.

### A. Factual Bases for Allegations

Defendants first argue that Plaintiffs have failed to plead with particularity as required by Rule 9(b) and the PSLRA. Specifically, Defendants assert that Plaintiffs have failed to allege with particularity specific facts demonstrating that statements were false when made and all facts supporting Plaintiffs' allegations made on information and belief. In the Court's order of June 14, 2000, the Court ordered Plaintiffs to "reformulate the complaint in a more straightforward manner," identifying which statements were allegedly false or misleading when made, which of the supposedly undisclosed adverse factors rendered the statements false or misleading when made and the bases for inferring that these factors, in fact, existed. Furthermore, the Court ordered Plaintiffs to "specifically identify each allegation of fraud that is not based on Plaintiffs' personal knowledge, and for each such allegation shall plead with particularity all facts supporting Plaintiffs' belief that the allegation is true." *See* 15 U.S.C. § 78u–4(b)(1). Defendants assert Plaintiffs have not done so.

### 1. Identification of Specific Statements and the Reasons for Their Falsity

Plaintiffs specifically identify allegedly false and misleading statements made within: a November 10, 1998 presentation to analysts made by Waxman and McGurran, *see* FAC at ¶ 42; a November 16, 1998 interview with Waxman published in *The Wall Street Transcript, see id.* at ¶ 54; a November 17, 1998 press release repeating some of Waxman's comments from the interview, *see id.* at ¶ 55; a December 3, 1998 presentation to analysts, investors and the media by Waxman and McGurran, *see id.* at ¶ 57; a January 26, 1999 press release, *see id.* at ¶ 61, and conference call with analysts, brokers and stock traders, *see id.* at ¶ 77; a February 18, 1999 presentation at a PaineWebber Silicon Valley conference, *see id.* at ¶ 80; a March 16, 1999 presentation to analysts and others at a PaineWebber internet conference, *see id.* at ¶ 84; a Form 10–K filed March 31, 1999 for 1998, *see id.* ¶ at 87; and eleven reports by third-party analysts that allegedly incorporated some of the statements made by Waxman and McGurran during their presentations, *see id.* at ¶¶ 42, 59, 78, 81, 85. The specific statements found within these presentations, press releases, interviews and third party statements concern Secure's then-current financial state and portray the company as an emerging leader and a sound company with growing earnings and product demand, which was "on track" to report its projected earnings.

Following the individual identification of each allegedly false and misleading statement, the FAC discusses why that statement is false and misleading, citing specific facts to support Plaintiffs' allegations of falsity, including, depending on the circumstances: declining sales and product demand; channel stuffing; premature revenue recognition of the NSA contract; product performance problems; and loss of market share to competitors. These factual allegations are discussed in greatest detail following Plaintiffs' identification of the first allegedly false and misleading statement. *See id.* at ¶¶ 44–53. This more detailed section and an earlier section discussing the allegedly improper revenue recognition of the NSA contract, *see id.* at ¶¶ 30–41, are then referred to in further support of Plaintiffs' subsequent allegations of false and misleading statements. Because, in general, the same underlying facts allegedly rendered each of Defendants' statements regarding the then-current financial state of Secure false and misleading, structuring the FAC in this manner is not improper, but rather avoids the unnecessary repetition of the same underlying facts and circumstances. Where necessary, the FAC pleads additional facts or pleads in greater detail to augment the references to the detailed prior sections. *See e.g.* FAC ¶¶ 62–76, 83.

Accordingly, the Court finds that Plaintiffs have satisfied the requirement of the PSLRA and this Court's prior order that they "specify each statement alleged to have been misleading." 15 U.S.C. § 78u–4(b)(1). For each statement Plaintiffs have also identified which of the allegedly undisclosed adverse factors rendered the statement false or misleading when it was made.

2. Information and Belief

■ Defendants argue that Plaintiffs' FAC should be dismissed because many of its allegations, specifically those regarding false and misleading statements and the facts supporting those statements, are made on information and belief. Defendants argue that Plaintiffs' allegations based on information and belief do not satisfy the requirements of Rule 9(b), the PSLRA, and this Court's prior order. Pursuant to the PSLRA, "if an allegation regarding [a] statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). The Court finds that Plaintiffs have met the requirements of Rule 9(b), the PSLRA, and this Court's prior order. Although most, if not all, of Plaintiffs' allegations appear to be made on information and belief, Plaintiffs' FAC, unlike the CCC, pleads with sufficient particularity the relevant facts upon which their belief in the allegations was formed.

■ The Court's June 14, 2000 Order noted that the Ninth Circuit has interpreted the PSLRA to require that allegations not plead on personal knowledge be plead far more specifically than was previously required in this circuit. *See In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 973 (9th Cir.1999). In the Ninth Circuit, alleged misrepresentations in private securities fraud actions that are not plead on personal knowledge must now be accompanied by a statement, "in great detail, [of] all the relevant facts forming the basis of [the plaintiffs'] belief." *Id.* at 985.

■ On June 14, 2000, the Court ordered Plaintiffs to "specifically identify each allegation of fraud that is not based on Plaintiffs' personal knowledge, and for each such allegation ... plead with particularity all facts supporting Plaintiffs' belief that the allegation is true." However, Plaintiffs are not required to state every fact that they possess that is in any way related to allegations that are plead on information and belief. Rather, a "plaintiff

must provide, in great detail, all the *relevant* facts forming the basis of her belief." *Silicon Graphics,* 183 F.3d at 985 (emphasis added). For example, if Plaintiffs make an allegation that is based on a statement from a witness, they must reveal the facts about that witness that were material to the formation of their belief that the witness' statement is accurate. The precise amount of detail that they must reveal depends on the circumstances. If Plaintiffs relied on the witness' job position or relation to Secure in deciding to believe the witness, the witness' job position or relation to Secure must be disclosed in the complaint. If Plaintiffs make an allegation about information that is likely to be known only to a few individuals, the actual identity of the source may be material, in which case the identity of the source must be plead in the complaint in order to satisfy the PSLRA.

Plaintiffs identify reports and witnesses on which they base their allegations. For example, Plaintiffs identify an "internal Secure Computing '3Q98 Sales Activity Report'" dated October 19, 1998. FAC ¶¶ 30, 48, 56. Plaintiffs describe witnesses such as the "current Air Force Program Director for Command and Control Systems at the Electronic Systems Center, Air Force Material Command ... who is personally familiar with the research and developments Sidewinder work that Secure Computing was doing for the Air Force." Also, descriptions such as "a former Company employee who worked in Government Sales," ¶ 38, "another former Company employee who worked on the NSA deal," ¶ 41, and "a former Company employee who served on Secure Computing's financial staff," ¶ 45, are sufficient when the context and the statement also indicate that such a statement, if coming from someone in the described position or relation to Defendants, would generally be reliable. Although general references to "several former Company employees,"

¶ 35, would in other circumstances not be sufficient, in context they support the level of knowledge and reliability asserted.

The Court finds that Plaintiffs have plead information and belief with sufficient particularity to satisfy the requirements of Rule 9(b), the PSLRA, and this Court's prior order.

### B. Scienter

The Court's order of June 14, 2000 found that a determination of whether Plaintiffs had plead scienter with the requisite particularity was premature because of the need for Plaintiffs to amend the complaint extensively on other grounds. Defendants now argue that Plaintiffs have not plead facts giving rise to a strong inference of scienter. In order to determine whether Plaintiffs have adequately plead scienter, the Court considers the complaint in its entirety, *see Silicon Graphics,* 183 F.3d at 985, and finds that the FAC now provides enough detail and organization for the Court to make a determination regarding whether Plaintiffs have plead scienter with the requisite particularity. The Court finds that Plaintiffs have done so.

Under the PSLRA, Plaintiffs must plead facts which show a " 'strong inference' of deliberate recklessness." *Silicon Graphics,* 183 F.3d at 977. Plaintiffs have plead that Defendants Taggart and McGurran personally organized and carried out a scheme improperly to recognize revenue from the NSA contract in 4Q98. *See* FAC ¶¶ 35–38. This scheme allegedly involved deliberately warehousing the still-unfinished hardware, on which the government would not accept delivery and for which the government was under no obligation to pay, and treating it as delivered for accounting purposes in contravention of GAAP and Secure's own policy. *See* FAC ¶¶ 62–76. Plaintiffs allege that, by

improperly recognizing this revenue, Defendants were able to report profits for 4Q98, when in reality they should have reported losses. Plaintiffs assert that Defendants' actual knowledge that the NSA contract was far from complete or even certain and their deliberate concealment of that knowledge by recognizing revenue from that contract, combined with Defendants' numerous statements regarding Secure's financial stability, earnings growth, and product demand and Defendants' suspicious trading lead to a strong inference of deliberate recklessness. The Court agrees.

Plaintiffs have plead facts sufficiently detailed and specific to show for pleading purposes that Defendants were deliberately reckless in recognizing revenue from the NSA agreement when they did. These allegations do not involve the mere failure to follow GAAP in reporting revenues. Rather, Plaintiffs have alleged the deliberate warehousing of materials Defendants knew were not ready for shipment and would not be accepted if shipped, the refusal of the buyer to alter the terms of the agreement to accept shipment or be liable for payment and the recognition of revenue despite clear indications that revenue was not forthcoming.

When combined with the other allegations regarding Defendants' misleading and false statements about the financial state of Secure and Defendants' insider stock sales, a strong inference of deliberate recklessness arises. Although Defendants assert that the amounts they sold and the timing of their sales were not suspicious, Plaintiffs' allegations indicate otherwise.

■ Insider trading is suspicious "when it is 'dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information.'" *Silicon Graphics*, 183 F.3d at 986. During the four-and-a-half month long class period, Defendants sold a total of 317,001 shares for total proceeds of $5,139,264. Of these, the lion's share were sold by Defendant Waxman, who sold 200,000 shares. Prior to the class period, none of the individual Defendants had ever sold any Secure stock. Plaintiffs assert that these sales represented from 83% to 100% of the individual Defendants' stock holdings. Defendants, however, argue that these percentages do not take into account Defendants' unexercised, but vested, stock options. Defendants assert that once these vested but unexercised options are taken into account, the individual Defendants sold only 6.3% (McGurran), 7% (Hughes), 13.6% (Smith), 28.3% (Waxman)[1], and 56% (Taggart) of their total stock and vested options.[2]

However, what is unique and suspicious about these sales is not the percentage of shares sold compared to total holdings, but rather that no Defendant had ever before sold any Secure stock and the coordination of the sales. Suddenly, between the last week of February and mid-March, 1999, the individual Defendants sold over 200,000 shares of stock, in many cases on the same days. These sales occurred almost immediately after Defendants Waxman and McGurran made statements at two

---

**1.** Defendants assert that the large amount of CEO Waxman's sales should not be considered suspicious because he separated from his wife during the class period. However, this alone does not necessarily explain the sales. If Defendant Waxman's divorce had actually been finalized during the class period, this would satisfactorily explain such a large sale

of assets. However, a mere separation does not provide the same reasonable explanation for such a sale of assets.

**2.** Defendant Regester's stock holdings were not reported in Secure's April, 1999 proxy statement.

PaineWebber conferences that Secure was on track to meet its 1Q99 and 1999 financial goals and almost immediately before Secure released the adverse financial information that lead to its March 31, 1999 drop in stock price. The timing of these sales combined with the unrebutted assertion that they were the first sales of any stock by any of the individual Defendants makes them suspicious.

Further circumstantial support for the inference of deliberate recklessness can be found in the temporal proximity between Defendants' last positive statements regarding Secure's financial status and the disclosure of Secure's 1Q99 results. On March 16, 1999 at a PaineWebber conference, Defendant McGurran stated that Secure was in line to meet its 1Q99 revenue and earnings projections. *See* FAC ¶¶ 84–85, 91. Two weeks later, Secure announced revenues of just over half that previously expected and a per share loss, rather than gain. *See id.* at ¶¶ 88, 91.

By pleading detailed allegations and their factual basis regarding Defendants' warehousing of hardware and improper revenue recognition, Defendants' other false and misleading statements of Secure's financial status, Defendants' suspicious stock sales, and the motive provided by the options vesting plan, Plaintiffs have plead facts sufficient to support a strong inference of deliberate recklessness.

### C. Liability for Third Party Statements

■■■■■ Plaintiffs' allegations regarding misleading statements made by third-party analysts are plead with sufficient particularity. A defendant can be held liable for false or misleading statements made by a third-party analyst if the defendant either expressly or impliedly adopts or endorses the statements, *see In re Syntex Corp. Sec. Litig.,* 95 F.3d 922, 934 (9th Cir.1996), or provides the analyst with false or misleading information with the intent that the analyst will communicate that information to the market, *see Cooper v. Pickett,* 137 F.3d 616, 624 (9th Cir.1997). For each analyst statement alleged to be attributable to Defendants, Plaintiffs sufficiently plead the conduit theory of liability. Plaintiffs allege a specific false and misleading statement by Defendants regarding the financial status of Secure, directly communicated to analysts at a specific place and time, followed on the very next day by analysts' recommendations to buy Secure stock. *See* FAC ¶¶ 42–44, 59, 77–78, 80–81, 84–85. These allegations identify the dates of Defendants' misleading and false statements, their locations, the speakers, the content of the statements, and the dates (in each case the following day), contents and speakers of the analysts' statements. These allegations are sufficient to plead liability for the analysts' statements.

### D. Forward–Looking Statements

■■■■ Defendants urge the Court to reconsider its prior ruling in the June 14, 2000 Order that certain statements made by Defendants were not forward-looking, but rather were statements of current business conditions. These statements all concern whether Secure was "on track" to meet its financial goals. The Court found, "By stating that Secure was on track to meet expectations, Defendants represented that a reasonable person who knew what Defendants knew at the time the statements were made could reasonably conclude that Secure was likely to meet analysts' expectations. Considered as statements of current business conditions, these statements were not forward-looking."

Again, the Court finds that the statements at issue are not forward-looking, but rather are statements of current business conditions. As such, they do not fall under the PSLRA's safe harbor provision or the

judicially-created bespeaks caution doctrine.

E. Liability of All Individual Defendants

Finally, Defendants argue that the Court should reconsider its finding in the June 14, 2000 Order that Plaintiffs adequately plead the individual Defendants' liability both for statements directly attributable to them and under the "group published information" doctrine. The Court will not do so, and again reaffirms its finding that Plaintiffs "have plead facts sufficient to establish, at least at the pleading stage, that the 'group published information' presumption applies to Regester, Taggart, Smith and Hughes." June 14, 2000 Order at 24.

CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motion to dismiss Plaintiffs' FAC (Docket No. 59). A case management conference will be held on Friday, September 28, 2001 at 1:30 p.m.

IT IS SO ORDERED.