COMMUNICATIONS TELESYSTEMS
INTERNATIONAL, Plaintiff,

v.

CALIFORNIA PUBLIC UTILITIES
COMMISSION, et al.,
Defendants.

No. C–97–1935 MHP.

United States District Court,
N.D. California.

June 22, 1998.

Thomas J. MacBride, Jr., Goodin Mac-Bride Squeri Schlotz & Ritchie, San Francisco, CA, M. Laurence Popofsky, David M. Goldstein, David C. Brownstein, Heller Ehrman White & McAuliffe, San Francisco, CA, for Plaintiff.

Mark Fogelman, Anne K. Mester, California Public Utilities Com'n, San Francisco, CA, for Defendants.

Adria Y. LaRose, Terry J. Huolihan, McCutchen Doyle Brown & Enersen, San Francisco, CA, for Intervenors–Defendants.

## *ORDER*

PATEL, District Judge.

Plaintiff Communications TeleSystems International ("CTS") brings this action against the California Public Utilities Commission and its Commissioners (collectively, "CPUC") for declaratory and injunctive relief. CTS alleges that the CPUC, through an administrative decision issued May 21, 1997, has violated its rights under the United States Constitution and federal law. The Greenlining Institute and the Latino Issues Forum (collectively "Greenlining") moved to intervene as defendants. The court granted this

motion pursuant to an order filed February 4, 1998.

Now before the court are defendants' motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Having reviewed the parties' arguments and submissions, the court now enters the following memorandum and order.

*BACKGROUND*

Plaintiff CTS is a California-based corporation providing intrastate, interstate and international telecommunications service. CTS is known as an interexchange carrier ("IXC") and provides long distance services to other IXCs as well as to various businesses.

It is CTS' involvement in the provision of phone services to residential households that is at issue here. In 1993, CTS decided to target so-called "ethnic" households, or homes where the primary language of the residents is not English. CTS solicited these potential customers by telephone and, if a consumer elected to switch his or her service to CTS, an independent confirmation service would first call the customer to verify that a service switch had been authorized. In order to help retain its customer base, CTS also instituted a program called "Stay With Us." Under this optional program, a CTS customer agreed that if his or her service was switched to another carrier, CTS would notify him or her of the switch and that he or she was being switched back to CTS.

Partially as a result of the Stay With Us program, CTS received a number of primary interexchange carrier ("PIC") complaints. These are reports from a local exchange carrier ("LEC") that a customer has complained that his or her long distance carrier was switched without authorization. Unauthorized PIC switching, which is known as "slamming" within the telecommunications industry and violates Cal. Pub. Util.Code § 2889.5, has been a focus of concern for the CPUC. The customer complaints against CTS alleged that CTS had slammed customers into service. In total, 56,000 consumers, mostly from ethnic communities, contacted their local phone company and complained that they had been switched without their consent.

As a result of these complaints, the CPUC, a California state agency with broad authority to regulate investor-owned public utilities, began an investigation into CTS.[1] On February 23, 1996, the CPUC issued an Order Instituting Investigation and Order to Show Cause Why CTS' Certificate of Public Convenience and Necessity Should Not Be Revoked ("OII"). The OII summarized evidence of slamming presented by the CPUC's Safety and Enforcement Division, set hearing dates on the matter, and also prohibited CTS from engaging in certain activities, such as submitting PIC changes to local exchange carriers within California and transferring or selling customers.

A number of evidentiary hearings were held on this matter. During seven days of hearings in front of an administrative law judge ("ALJ"), each of the parties presented testimony and conducted cross-examinations.[2] In addition, all parties filed opening and reply briefs. After the hearings, the ALJ issued two proposed orders, to which the parties filed initial and reply comments. The ALJ then issued a third proposed decision for limited comment. Finally after reviewing the record and the proposed decision, the CPUC filed its final decision on May 21,1997, with an effective date of June 20, 1997.

The decision found CTS liable for widespread violations of Cal. Pub. Util.Code § 2889.5. In addition, the decision imposed numerous sanctions against CTS including: 1) suspending CTS from providing intrastate service in California for three years; 2) permanently prohibiting CTS from submitting PIC changes directly to LECs;[3] 3) requiring CTS to pay $1,939,412 (its 1995 revenues from intrastate calls in California) as reparations; 4) fining CTS $19.6 million for its Stay With Us program; and 5) binding all successor entities to the sanctions imposed on CTS.

---

1. Among its various duties, the CPUC is responsible for enforcing Cal. Pub. Util.Code § 2889.5.

2. In addition to the CPUC and CTS, two public interest groups, the Greenlining Institute and the Latino Issues Forum, were granted permission to intervene in the action.

3. CTS may, after five years, apply to have its right to submit PIC changes reinstated.

On May 22, 1997, CTS filed a complaint in this court.

On June 10, 1997, CTS filed an application for rehearing, which automatically stayed the decision's effective date for 60 days unless the CPUC acted on the application for rehearing prior to the 60 day period. Cal. Pub. Util.Code § 1733(a). The Decision on Rehearing was issued on October 22, 1997. All of CTS' allegations of error were reviewed, although only one of them was found to be meritorious. On November 21, 1997, CTS filed a petition for writ of review and a request for stay of the CPUC's decision with the California Supreme Court, pursuant to Cal. Pub. Util.Code § 1756. Both were denied on December 23, 1997.

Plaintiff earlier filed a motion for preliminary injunction that is pending before this court. Although the parties did not address the abstention issue in writing at that time, the court stated at the hearing that it had some concerns relating to that issue. Before the court issued a decision on the motion for preliminary injunction, some jurisdictional arguments were made by the defendants through letters and supplemental briefing. The court decided that, if meritorious, defendants' arguments went to the threshold issue of whether the court should exercise jurisdiction over the action. Therefore, the court found it more appropriate for the parties to brief those issues, and for the court to rule on them, before any decision on the motion for a preliminary injunction was issued. Both the CPUC and Greenlining have since filed motions to dismiss.

*LEGAL STANDARDS*

I. *12(b)(1)*

 Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint. A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack federal jurisdiction either "facially" or "factually." *Thornhill Publishing Co., Inc. v. General Telephone & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). When attacking the complaint for lack of subject matter jurisdiction on its face, all material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Indus-*

*tries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986).

II. *12(b)(6)*

 A motion to dismiss for failure to state a claim will be denied unless it appears that the plaintiff can prove no set of facts which would entitle him or her to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Fidelity Financial Corp. v. Federal Home Loan Bank of San Francisco*, 792 F.2d 1432, 1435 (9th Cir. 1986), *cert. denied*, 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987). All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986). Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987), *cert. denied sub. nom. Wyoming Community Dev. Auth. v. Durning*, 484 U.S. 944, 108 S.Ct. 330, 98 L.Ed.2d 358 (1987).

On any other motion to dismiss under Rule 12(b), the court may consider matters outside the pleadings, but must accept as true all material allegations of the complaint and construe the complaint in favor of the plaintiff. *See* Fed.R.Civ.P. 12; *Warth v. Seldin*, 422 U.S. 490, 501–02, 95 S.Ct. 2197, 2206–07, 45 L.Ed.2d 343 (1975) (considering the issue of standing).

*DISCUSSION*

I. *Younger Abstention*

 Defendants argue that this court should decline to hear this action under the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *Younger* held that, absent extraordinary circumstances, federal courts should not enjoin pending state criminal prosecutions. *Id.* at 43–44, 91 S.Ct. 746. This doctrine has been extended to civil matters, including pending state administrative matters. *See, e.g., Ohio Civil Rights Commission v. Dayton Chris-*

*tian Schools, Inc.,* 477 U.S. 619, 627, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986).

The Ninth Circuit has held that *"Younger* abstention is appropriate if (1) there are ongoing state judicial proceedings, (2) the proceedings implicate important state interests, and (3) there is an adequate opportunity in the state proceedings to raise federal questions." *Dubinka v. Judges of Superior Court,* 23 F.3d 218, 223 (9th Cir.1994) (internal quotations and citations omitted). "When a case falls within the proscription of *Younger,* a district court must dismiss the federal action." *Fresh Int'l. Corp. v. Agricultural Labor Relations Bd.,* 805 F.2d 1353, 1356 (9th Cir.1986).

### A. Ongoing State Judicial Proceedings

CTS does not dispute that quasi-judicial administrative proceedings such as those conducted by the CPUC are considered "judicial proceedings" under the *Younger* doctrine. *See, e.g., New Orleans Public Service, Inc. v. New Orleans,* 491 U.S. 350, 369, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (*"NOPSI"*). In addition, the parties appear to agree that the fact the California Supreme Court has denied review of CTS's claim does not mean that *Younger* abstention is now inappropriate. Rather "the critical question is not whether the state proceedings are still 'ongoing' but whether 'the state proceedings were underway before initiation of the federal proceedings.'" *Kitchens v. Bowen,* 825 F.2d 1337, 1341 (9th Cir.1987), *cert. denied,* 485 U.S. 934, 108 S.Ct. 1109, 99 L.Ed.2d 270 (1988) (citing *Fresh Int'l.,* 805 F.2d at 1358.) Here, CTS filed its complaint in federal court on May 22, 1997. Thus, as a threshold matter the court must consider whether the state proceedings were "underway" as of that date.

CTS argues that the proceedings were not "underway" as of May 22, 1997 because the CPUC had issued a document titled "Final Decision" that was intended to conclude the matter. In addition, no appeal or application for rehearing had been filed as of that date, although CTS did subsequently file a notice of rehearing on its state law claims only. CTS maintains that it was faced with a ban

on its provision of intrastate telephone service due to the CPUC's decision and thus that it had no choice but to file in federal court in order to prevent irreparable harm. According to CTS, the fact that further matters in this case could have been taken up by the CPUC does not change the conclusion that the decision was final and thus that the matter was not underway for *Younger* purposes.

The court finds CTS' argument unpersuasive. To begin with, although the CPUC's decision was issued on May 21, 1997, its effective date was not until June 20, 1997. Pursuant to Cal. Pub. Util.Code § 1731, CTS had 30 days from the issuance of the order to file an application for rehearing. CTS then filed its petition for a rehearing on June 10, 1997; this served to automatically stay the effective date of the decision for sixty days under Cal. Pub. Util.Code § 1733(a). On August 1, 1997, the CPUC stayed the effective date of the original decision until the issuance of a decision upon rehearing. On October 22, 1997, CTS' application for hearing was granted in part and denied in part. Thus, at the time that CTS filed this matter in federal court on May 22, 1997, the decision of the CPUC had been rendered but was not yet effective. In addition, although the decision was titled "Final," CTS had a right to apply for a rehearing of the matter, which it did. Indeed, the application for rehearing was granted in part by the CPUC.[4] Mester Decl., Ex. 13. Given the above, " 'the state [administrative] proceedings were certainly underway before initiation of the federal proceedings.' " *Kitchens,* 825 F.2d at 1341 (citing *Fresh Int'l.,* 805 F.2d at 1358.)

CTS' arguments to the contrary are unpersuasive. CTS cites to several cases that it maintains demonstrate that the proceedings in this case were not underway at the time it filed its federal lawsuit. The court finds, however, that the cases cited by CTS do not support its position. In *Kleenwell Biohazard Waste v. Nelson,* for example, the Ninth Circuit did not even address the merits of the defendant's *Younger* claim because, by rais-

---

4. As the CPUC points out, under California law, the "final" administrative decision is that made on an application for rehearing, not the original decision. Cal. Pub. Util.Code § 1731(b); *City of*

*Los Angeles v. Public Util. Comm'n,* 15 Cal.3d 680, 707, 125 Cal.Rptr. 779, 542 P.2d 1371 (1975).

ing the claim for the first time on appeal, defendant had effectively waived it. 48 F.3d 391, 394 (9th Cir.), *cert. denied,* 515 U.S. 1143, 115 S.Ct. 2580, 132 L.Ed.2d 830 (1995). In addition, the Ninth Circuit has more recently suggested that *Younger* abstention issues can be raised *sua sponte* by the court and on appeal. *San Remo Hotel v. City and County of San Francisco,* 98 Daily Journal D.A.R. 5827, 5830 (9th Cir., June 3, 1998).

The cases from other Circuits are similarly unavailing. In *CECOS International, Inc. v. Jorling,* the court held that the state administrative proceeding was not ongoing for *Younger* purposes because the matter had been dismissed before the parties filed in federal court. 895 F.2d 66, 71 (2d Cir.1990). Although the matter was subsequently reopened, the court concluded that it had not been underway as of the time that the federal suit was filed. *Id.* at 73. Similarly, in *Thomas v. Texas State Bd. Of Medical Examiners,* there was no state action underway as of the time of filing since the state suit had been dismissed by the plaintiff prior to the filing of the federal claim. 807 F.2d 453, 457 (5th Cir.1987). Here, on the other hand, the state proceeding had not been dismissed, but was still active as of the time of the federal filing.

Finally, in *Norfolk & Western Ry. Co. v. Public Util. Comm.,* the Sixth Circuit found that there were no ongoing state proceedings for *Younger* purposes where no further administrative proceedings or appeals were available short of state *judicial* review. 926 F.2d 567, 572 (6th Cir.1991). Here, however, administrative proceedings were available *in addition to* judicial review. In fact, by filing an application for rehearing that served to stay the effective date of the CPUC's May decision, CTS availed itself of the further administrative proceedings available. Thus, the cases cited by CTS do nothing to alter the court's conclusion that state proceedings were underway as of the time the federal lawsuit was filed.

CTS also points to the fact "that a federal equity plaintiff challenging state administrative action need not have exhausted his state judicial remedies" before pursuing relief in federal court. *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 609, n. 21, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). However, by finding that the proceedings here were underway and ongoing, the court is in no way holding that CTS needed to have exhausted its state judicial remedies before filing in federal court. Rather, the court is simply concluding that the fact that the CPUC's decision was not effective as of the date of CTS' federal filing, coupled with CTS' petition for rehearing, demonstrate that the proceeding was ongoing and underway for *Younger* purposes.

### B. *Important State Interests*

The next issue the court must consider is whether there are important state interests implicated by the proceedings. Rather than actually arguing that there are no important state interests, CTS maintains that "[n]o significant state interest is served when the state law is preempted by federal law and that preemption is 'readily apparent.'" *Gartrell Construction Inc. v. Aubry,* 940 F.2d 437, 441 (9th Cir.1991). According to CTS, it is "readily apparent" that the CPUC's actions are preempted by the Telecommunications Act of 1996, 47 U.S.C. §§ 151 *et seq.* (the "Act"), and the Supremacy Clause of the United States Constitution.

The Act was designed to establish "a procompetitive, deregulatory national policy framework" for telecommunications providers. S. Conf. Rep. No. 104–239, 104th Cong., 2d Sess., 1 (1996). In addition, it sought "to accelerate deployment of advanced telecommunications services to all Americans by opening all telecommunications markets to competition." *Id.* The section primarily at issue here deals with removal of barriers to entry into the telecommunications industry. 47 U.S.C. § 253.

Under the Supremacy Clause, Congress may preempt state laws and regulations. The Supreme Court has held that " '[p]reemption may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.'" *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) (quoting *FMC Corp. v. Holliday,* 498 U.S. 52, 56–57, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990)). The question of whether a state law is preempted

"is one of statutory intent" and courts must assume " 'that the ordinary meaning of [the statutory] language accurately expresses the legislative purpose.' " *Morales,* 504 U.S. at 383, 112 S.Ct. 2031 (quoting *Holliday,* 498 U.S. at 57, 111 S.Ct. 403.)

Here, section 253 of the Act contains an express preemption clause which states that "[n]o State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a). This provision, however, does not serve to render state regulation of telecommunications obsolete. Rather, there is an exception to the preemption clause stating that:

> [n]othing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with section 254 [5] of this section, requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers.

47 U.S.C. § 253(b).

CTS does not contend that Cal. Pub. Util. Code § 2889.5, the anti-slamming provision, is preempted by the Act. Rather, it argues that the decision rendered by CPUC is preempted by section 253(a).[6] Specifically, CTS maintains that the portion of the decision preventing CTS from providing intrastate service for three years is preempted. CTS further argues that the decision does not fall under the parameters of section 253(b) because it is not "necessary" to protect public safety, ensure continued quality, or safeguard the rights of consumers.

The court disagrees with CTS that preemption is "readily apparent." It is certainly not clear to the court, having reviewed the CPUC's decision, that the decision would be preempted by the Act, particularly given section 253(b). Although CTS does not cite to any cases demonstrating that the CPUC's decision would be preempted, in its motion

for a preliminary injunction, it cited to *In the Matter of New England Public Communications Council Petition for Preemption Pursuant to Section 253,* FCC 96–470, 1996 WL 709132. In that decision, the FCC struck down a Connecticut Department of Public Utility Control ("DPUC") restriction on companies authorized to provide pay telephone service in Connecticut. The DPUC's prohibition, unlike that at issue here, did not deal with sanctions imposed on one company. Rather, it prevented the provision of payphone services by *any* company except incumbent and certified LECs.

The court finds that *In the Matter of New England Public Communications* is distinguishable from the case at bar and does not support CTS' argument that the CPUC decision is preempted by section 253. To begin with, as the FCC notes time and again in its opinion, the DPUC had issued an outright ban on all companies, save incumbent and licensed LECs, attempting to enter the payphone market in Connecticut. Here, the CPUC's decision, unlike that of the DPUC, is not "a prohibition on entry by an entire class of potential competitors." *In the Matter of New England Public Communications,* 1996 WL 709132 at 6. Rather, the CPUC's decision applies *exclusively* to CTS and was issued only after numerous customer complaints of illegal activity and evidentiary hearings at which CTS was given a full opportunity to participate.

By issuing a blanket prohibition, the DPUC had tarred all payphone companies with the same brush. The DPUC argued that its prohibition was necessary because the economic structure of the payphone industry led to abusive practices of independent payphone providers. 1996 WL 709132 at 6. There were, however, no findings that *all* independent providers were guilty of abusive practices. In addition, the DPUC had not shown that the economic structure of the payphone industry, which allegedly led to abusive practices, was any different from the structure of the LEC industry.

---

5. Section 254 deals with universal service and is not at issue here.

6. Solely for the purposes of this motion, the court will accept CTS's assumption that a deci-

sion of a state regulatory agency is a "State or local statute or regulation" or a "State or local legal requirement" under section 253(a).

Here, by contrast, findings were made that an individual company had violated a statute that unquestionably was designed to protect the rights of consumers. The CPUC concluded, after investigation and numerous proposed opinions by the ALJ on which CTS was allowed to comment, that sanctions, including a suspension on providing intrastate service, were necessary. CTS may disagree with the findings and the sanctions, but it has not shown the court that preemption of the decision of the CPUC is "readily apparent" or that the sanctions imposed are disallowed by section 253(b).

Furthermore, the Supreme Court has suggested that if further factual inquiry is needed in order to determine preemption, it cannot be readily apparent for purposes of a threshold abstention determination. *NOPSI*, 491 U.S. at 366–67, 109 S.Ct. 2506. Here, the court finds that further factual inquiry would be needed in order to determine whether the action of the CPUC was "necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers." 47 U.S.C. § 253(b). CTS argues that the decision was indisputably unnecessary because, as the CPUC itself had recognized in the May 21 order, CTS had already been prevented from slamming customers through the PIC freeze and thus could no longer harm the public.

The court, however, does not see the issue in such simple terms. Under CTS' analysis, the CPUC would be able to prevent CTS and other service providers from engaging in illegal behavior such as slamming but would not be able to fine, suspend or otherwise sanction them for that behavior, as the fines, suspensions or sanctions would not be absolutely necessary, under CTS' analysis, to prevent the illegal behavior. The court does not agree with this reasoning, and posits that fines and sanctions, including the suspension at issue in this case, may actually be necessary to "ensure the continued quality of telecommunications services" and send a message to other licensed providers that certain illegal behavior will not be tolerated by the state. This is so even if the wrongdoer has already been prevented from doing the particular illegal behavior in question. Thus, a factual inquiry would be necessary here before any meaningful analysis of CTS' preemption claim could be done. *See, e.g., Fresh Int'l*, 805 F.2d at 1361 (holding that *Younger* abstention is appropriate when preemption is not "readily apparent").

Although the court has found that preemption is not readily apparent, it must still consider whether important state interests were implicated by the proceedings. When courts "inquire into the substantiality of the State's interest in its proceeding [they] do not look narrowly to its interest in the outcome of the particular case. . . . Rather, what [they] look to is the importance of the generic proceedings to the State." *NOPSI*, 491 U.S. at 365, 109 S.Ct. 2506. Here, the State of California has significant interests in protecting consumers within its borders from unfair business practices such as slamming. In addition, the state, through the CPUC, has an important interest in enforcing its telecommunications laws and ensuring that all licensed carriers operate in a law-abiding fashion. Thus, the court finds that the second prong of the *Younger* test is satisfied.

### C. *Adequate Opportunity to Raise Federal Questions*

Finally, the court must consider whether CTS had an adequate opportunity to raise its federal claims. CTS argues that it was not afforded such an opportunity because review of CPUC decisions by the California Supreme Court is summary and insufficient for dissatisfied litigants to raise federal claims. Here, the California Supreme Court summarily denied CTS' petition for review of the CPUC's decision.

In support of this argument, CTS cites to Ninth Circuit dicta stating that, in the cases of appeals to the California Supreme Court from CPUC decisions, "[t]he litigant whose petition for review is denied cannot be said to have received a full and fair opportunity to litigate his claims." *United Parcel Service, Inc. v. California Public Util. Comm'n*, 77 F.3d 1178, 1187 (9th Cir.1996) (*"UPS"*). CTS also notes that the California Supreme Court reviews only a very small percentage of the writs it receives and has only granted one review of a CPUC decision out of the

past 68 petitions filed. According to CTS, the inadequacy of the review process affords it no viable forum to raise its federal claims.

Defendants, on the other hand, maintain that CTS has had more than enough opportunity to raise its federal claims. To begin with, defendants point out that CTS was permitted to raise its preemption and other federal claims on its petition for rehearing. In addition, defendants argue that, despite the fact that a plenary review of its case was not granted by the California Supreme Court, CTS had a full and fair opportunity to raise its claims.

In support of their argument, defendants cite to the California statute governing California Supreme Court review of CPUC decisions. Under this provision, review "shall not be extended further than to determine whether the commission had regularly pursued its authority, including a determination of whether the order or decision under review violated any right of the petitioner under the Constitution of the United States or of this State." Cal. Pub. Util.Code § 1757. A further provision states:

> In any proceeding wherein the validity of any order or decision is challenged on the ground that it violates any right of petitioner under the Constitution of the United States, the Supreme Court shall exercise an independent judgment on the law and the facts, and findings or conclusions of the commission material to the determination of the constitutional question shall not be final.

Cal. Pub. Util.Code § 1760. Finally, defendants argue that Ninth Circuit and United States Supreme Court caselaw holds that, despite the narrow chance of receiving plenary review before the California Supreme Court, CTS has had an adequate opportunity to have its federal claims reviewed on the merits.

Having reviewed the applicable statutes and caselaw, the court finds that, for *Younger* abstention purposes, CTS did have an adequate opportunity to raise its federal claims. To begin with, CTS does not dispute that it had the right to bring its federal claims in its request for an administrative rehearing. In addition, sections 1757 and 1760 demonstrate that parties such as CTS undoubtedly are allowed to bring claims that

a CPUC decision violated federal or constitutional law. CTS argues that it raised only its state law claims in its application for rehearing and its petition before the Supreme Court. As the Supreme Court has noted, however, when it comes to issues of *Younger* abstention, "[a]ppellees need be accorded only an opportunity to pursue their constitutional claims in the ongoing state proceedings ... and their failure to avail themselves of such opportunities does not mean that the state procedures were inadequate." *Moore v. Sims,* 442 U.S. 415, 431 n. 12, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (citation omitted).

In addition, although CTS was not granted a hearing and a written decision by the California Supreme Court, under California law, its petition was "reviewed" by the Court and constitutes a final decision on the merits. *Consumers Lobby Against Monopolies v. Public Utilities Comm'n,* 25 Cal.3d 891, 901, 160 Cal.Rptr. 124, 603 P.2d 41 (1979). As such, the review is different from a denial of certiorari by the United States Supreme Court, which does *not* constitute a decision on the merits.

Although *Consumers Lobby* was not a *Younger* abstention case, the California Supreme Court described in some detail its procedure for reviewing decisions by the CPUC.

> Specifically, our denial of a petition for writ of review is 'a decision on the merits both as to the law and the facts presented in the review proceedings....' The sole means provided by law for judicial review of a commission decision is a petition to this court for writ of review (Pub.Util. Code, § 1756), which thereby serves in effect the office of an appeal. If our ruling on such a petition were not a final decision on the merits both as to the law and the facts presented, the parties would be denied their right to such review. Because it must therefore be deemed a decision on the merits, our denial of such a petition raises the bar of res judicata against relitigation of the same cause of action between the same parties or their privies.

25 Cal.3d at 901, 160 Cal.Rptr. 124, 603 P.2d 41 (internal quotations omitted).

The Supreme Court, in an early but still valid opinion, has come to the same conclusion, stating that the California Supreme Court's denial of review from a decision of the Railroad Commission, which was succeeded by the CPUC, is "tantamount to a decision of the court that the orders and decision of the Commission did not exceed its authority or violate any right of the several petitioners under the Constitution of the United States or of the State of California." *Napa Valley Elec. Co. v. Board of Railroad Com'rs of California,* 251 U.S. 366, 372–73, 40 S.Ct. 174, 64 L.Ed. 310 (1920). In addition, the Court concurred with the lower courts that "the absence of an opinion by the Supreme Court did not affect the quality of its decision or detract from its efficacy as a judgment upon the questions presented, and its subsequent conclusive effect." *Id.; see also, Pacific Telephone and Telegraph Co. v. Public Util. Comm'n of California,* 600 F.2d 1309, 1311 (9th Cir.), *cert. denied,* 444 U.S. 920, 100 S.Ct. 239, 62 L.Ed.2d 176 (1979) (stating that "[t]he United States Supreme Court and this court have acknowledged that, under California law, the California Supreme Court's denial of writs of review of rate decisions constitutes a denial on the merits.") Although the above decisions do not deal with appeal of CPUC decisions in the context of a *Younger* analysis, they do confirm that CTS had an adequate opportunity to judicially raise its federal claims, even if it was not afforded the benefit of oral argument and a written decision.

Furthermore, the Ninth Circuit has, on more than one occasion, held that for purposes of *Younger* abstention, the right to petition for review in front of the California state courts constitutes an adequate opportunity to raise federal claims. For example, the Ninth Circuit has recently held, in a case dealing with an appeal of a decision by the California Commissioner of Corporations, that a plaintiff's "ability to raise the [federal] issue before the [administrative law judge], develop the factual record, and then to litigate the issue in state judicial proceedings suffices to satisfy the third prong of the *Younger* test." *Delta Dental Plan of California, Inc. v. Mendoza,* 139 F.3d 1289, 1295–96 (9th Cir.1998). In addition, like CTS here, the plaintiff in *Delta Dental* alleged

that it filed in federal court in part to receive quicker relief. The Ninth Circuit concluded that while such an assertion may have been true, "such factors simply are irrelevant to application of the *Younger* doctrine." *Id.*

The Ninth Circuit came to a similar conclusion in *Fresh Int'l.* There, plaintiffs challenged a decision of the California Agricultural Labor Relations Board. 805 F.2d at 1354. Under California law, they were entitled to bring a petition for review before the California Court of Appeal. *Id.* at 1362. In so doing, they were not restricted by statute from bringing federal constitutional claims, including preemption claims. *Id.* Finding that the federal plaintiffs' claims could be raised in a state court review of administrative proceedings, the court held that *Younger* abstention was appropriate and reversed the district court's finding to the contrary. *Id.*

CTS correctly argues that the Ninth Circuit has never specifically held that parties challenging CPUC decisions have an adequate opportunity, for *Younger* purposes, to raise their federal claims in state proceedings. However, the Ninth Circuit has never held to the contrary either. CTS was, pursuant to statute, permitted to raise its federal claims in both administrative and judicial fora. In addition, the California Supreme Court, the United States Supreme Court and the Ninth Circuit have all recognized that the California Supreme Court's denial of a petition in cases such as this is a decision on the merits, even if a written order is not issued. Finally, the Ninth Circuit has held on more than one occasion that the opportunity to raise federal claims in state courts in a challenge to an administrative decision is adequate. Given the above, the court is confident in concluding that the third prong of the *Younger* abstention test is met.

Finally, the court finds that *UPS,* the case upon which CTS primarily relies, does not support CTS' position. In *UPS,* a case dealing with the res judicata effect of denial of review of CPUC decisions by the California Supreme Court, the Ninth Circuit observed that a "litigant whose petition for review is denied thus cannot be said to have received a full and fair opportunity of his claims." 77 F.3d at 1187. Despite this, however, the

court went on to re-affirm, albeit with reservations, the fact that the United States Supreme Court and the Ninth Circuit had held that a denial of review of a CPUC decision constituted a decision on the merits. *Id.* at 1188. In addition, *UPS* was not a case dealing with *Younger* abstention, but rather one dealing with an *England* reservation, which plaintiff here did not make. 77 F.3d at 1183. In fact, the court noted that *Younger* abstention would not be applicable as it did not apply to the rate-making proceedings at issue. *Id.* at 1184, n. 5.

The court is well aware that its decision to abstain from this action and dismiss it on *Younger* grounds may preclude CTS from further litigating its federal claims. However, this is due to the manner in which CTS opted to proceed with this matter. Although CTS had an opportunity to raise its federal claims in both its administrative appeal and its petition for review to the California Supreme Court, it chose not to. In addition, CTS could conceivably have continued with its federal action if it had decided to forego any further state proceedings. Under such a scenario, no state proceeding would have been "underway" or "ongoing" and *Younger* abstention would thus not have been appropriate. For strategic or other reasons, however, CTS opted to continue litigating in both state and federal fora.

II. *Other Grounds Asserted for Dismissal*

Because this court has conclusively established that it must abstain from this matter in its entirety and dismiss it on *Younger* grounds, it need not consider the other grounds for dismissal asserted by defendants.

*CONCLUSION*

For the foregoing reasons, defendants' motion to dismiss is GRANTED. The complaint is hereby DISMISSED IT ITS ENTIRETY. Because the court has dismissed the complaint, plaintiff's motion for a preliminary injunction is moot.

This order fully adjudicates the motions reflected at Docketè9–1, 59–1 and 62–1, and the Clerk of the Court shall remove them from the pending motions list.

IT IS SO ORDERED.