COMMUNICATIONS TELESYSTEMS INTERNATIONAL, a California corporation, Plaintiff–Appellant,

and

Greenlining Institute; Latino Issues Forum; Greenlining Institute and Latino Issues Forum, Intervenors,

v.

CALIFORNIA PUBLIC UTILITY COMMISSION; P. Gregory Conlon; Jessie J. Knight, Jr.; Henry M. Duque; Josiah L. Neper; Richard A. Bilas, Defendants–Appellees.

Communications Telesystems International, a California corporation, Plaintiff–Appellant,

v.

P. Gregory Conlon; Jessie J. Knight; Henry M. Duque; Josiah L. Neper; Richard A. Bilas, Defendants–Appellees,

and

Greenlining Institute and Latino Issues Forum, Defendant–Intervenor–Appellee.

Nos. 98–16400, 99–15940.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 5, 1999.

Filed Nov. 4, 1999.

M. Laurence Popofsky, Heller Ehrman White & McAuliffe, San Francisco, California, for the plaintiff-appellant.

Terry J. Houlihan, McCutchen, Doyle Brown & Enersen, San Francisco, California, for defendants-appellees The Greenlining Institute and Latino Issues Forum; Lynne P. McGhee, San Francisco, California, for defendant-appellee California Public Utilities Commission.

Before: GOODWIN, SCHROEDER, and GRABER, Circuit Judges.

GOODWIN, Circuit Judge:

Plaintiff Communications Telesystems International ("CTS") sued in district court ("*CTS 1*") to set aside sanctions imposed upon it by the California Public Utilities Commission ("CPUC"). CTS claimed that the sanctions violated the Telecommunications Act of 1996, 47 U.S.C. § 253 (the "Act"). The district court eventually dismissed the action in deference to state proceedings under the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *See CTS v. CPUC*, 14 F.Supp.2d 1165, 1166–67 (N.D.Cal.1998). CTS appeals that decision in Appeal No. 98–16400. CTS then filed a second challenge ("*CTS 2*") raising the same issues. The district court again dismissed, this time concluding that the state proceedings barred the claim under the doctrine of res judicata. CTS appeals the second dismissal in Appeal No. 99–15940. *CTS 1* and *CTS 2* have been consolidated for the purpose of disposition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

CTS is a California-based corporation that provides intrastate long-distance telecommunications services under authority granted by the CPUC. This case began after the CPUC received more than 56,000 complaints from California consumers that their long-distance carrier had been switched to CTS without their permission, an unlawful practice known as "slamming." On May 21, 1997, after more than a year of investigation and administrative proceedings before an administrative law judge, the CPUC concluded that CTS had indeed engaged in slamming, as prohibited by California Public Utility Code § 2889.5. *See Final Decision*, 1997 Cal. PUC LEXIS 447. Among the sanctions imposed by the CPUC was a three-year prohibition on the provision of intrastate long-distance services in California. It is only this sanction which CTS seeks to enjoin in federal court.

On May 22, 1997, CTS filed *CTS 1* in federal district court, arguing that the suspension on the provision of intrastate services is preempted by § 253 of the Act, and should therefore be enjoined. CTS focuses on § 253(a) of the Act, which provides that "[n]o State or local statute or regulation, or other ... legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." Section 253(b), however, provides that "[n]othing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with section 254 of this section, requirements necessary to ... protect the public safety and welfare ... and safeguard the rights of consumers." Because the CPUC already had eliminated CTS' ability to engage in slamming,[1] CTS argues that the three-year suspension violates the Act because it is not "necessary to ... safeguard the rights of consumers."

Although no substantive proceedings took place in the federal case for almost a year, the state proceedings continued apace. On June 10, 1997, before the deci-

---

1. *See Interim Order*, 1997 WL 178856 (Cal. P.U.C. Mar.18, 1997) (Decision No. 97–03– 053).

sion of the CPUC became effective, CTS filed a petition for rehearing with the CPUC pursuant to California Public Utility Code § 1733(a). In that petition, CTS purported to reserve its federal claims under *England v. Louisiana Board of Medical Examiners*, 375 U.S. 411, 420, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). CTS did not describe its federal claims, however. On October 22, the CPUC denied the bulk of the petition for rehearing. *See Order* (Cal. P.U.C. Oct. 22, 1997) (Decision No. 97–10–063). The Order does not discuss § 253 of the Act. The CPUC did consider the preemptive effect of § 253, however, in its interim order freezing CTS' ability to switch consumers' long-distance service. *See Interim Order*, 1997 WL 178856, *3–4.

On November 21, 1997, CTS filed in the California Supreme Court a petition for a Writ of Review. In that petition, CTS did not present its federal claims or purport to make an *England* reservation of those claims. At the time, the petition was the only judicial review of CPUC decisions available in California. *Compare* Cal. Pub. Util.Code §§ 1756–61 (1997) *with* §§ 1756–61 (1999). On December 23, 1997, the California Supreme Court summarily denied review. On January 5, 1998, CTS halted intrastate service in California.

On June 22, 1998, the district court dismissed *CTS 1*, holding that abstention was appropriate under the *Younger* doctrine. *See CTS 1*, 14 F.Supp.2d at 1166–67. In a well-reasoned decision, the district court concluded that state proceedings were still ongoing at the time CTS filed suit in federal court, that important state interests were at stake, and that the California state courts afforded CTS an adequate opportunity to raise its federal claims.

On July 20, 1998, CTS filed a second federal action, *CTS 2*, again claiming that the CPUC's sanctions violated § 253 of the Act. Because state proceedings were *no* longer ongoing at that time, *Younger* did not apply. In due course, the district court dismissed this second action, holding that because the federal claim could have been raised in the state proceedings, CTS' suit was barred by claim preclusion. CTS appeals both dismissals.

## II. STANDARD OF REVIEW

■ We review a decision to abstain under *Younger* as a question of law. *See Dubinka v. Judges of the Superior Court*, 23 F.3d 218, 221 (9th Cir.1994). A district court's determination that a claim is barred by res judicata also is reviewed as an issue of law. *See Cabrera v. City of Huntington Park*, 159 F.3d 374, 381 (9th Cir.1998).

## III. DISCUSSION

■ Abstention by a district court is required under *Younger* when three criteria are satisfied:

(1) State judicial proceedings are ongoing;

(2) The proceedings implicate important state interests; and

(3) The state proceedings provide an adequate opportunity to raise federal questions.[2]

*Fresh Int'l Corp. v. Agricultural Labor Relations Bd.*, 805 F.2d 1353, 1357–58 (9th Cir.1986). The doctrine propounded by *Younger* and its progeny reflects a strong policy against federal court interference in ongoing state proceedings. The interests of comity, federalism, economy, and the presumption that state courts are competent to decide issues of federal constitutional law underlie *Younger* abstention. *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 431–32, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).

■ Res judicata, or claim preclusion, bars courts from hearing claims that

---

**2.** This prong is intertwined with the res judicata analysis discussed in Part III, subsection

3, *infra*.

should have been raised and resolved in earlier litigation between the same parties. This salutatory rule is motivated by policies of avoiding repetitive litigation and conserving judicial resources. *International Union of Operating Engineers–Employers Const. Industry Pension, Welfare and Training Trust Funds v. Karr*, 994 F.2d 1426, 1430 (9th Cir.1993).

### 1. State Judicial Proceedings Were Ongoing.

■ CTS contends that state proceedings were not ongoing when it filed *CTS 1* with the district court because the CPUC had labeled its decision "final" one day before CTS filed suit in federal court. However, by its own terms, the CPUC's decision was not to take effect for 30 days. *See Decision No. 97–05–89.* During this interim period, CTS was not only aware that a petition for a rehearing was available as of right, but CTS in fact filed such a petition on June 10, 1997. According to California law, the "final" administrative decision is the one made on an application for rehearing, not the original decision. *See* Cal. Pub. Util.Code § 1731(b); *City of Los Angeles v. Public Util. Comm'n*, 15 Cal.3d 680, 707, 125 Cal.Rptr. 779, 542 P.2d 1371 (1975). Hence, the decision by the CPUC was not final until October 22, 1997, when the order denying rehearing was filed. CTS subsequently filed an appeal with the California Supreme Court, which was denied on December 23, 1997.

■ Even more damaging to CTS' claim that the state proceedings were not ongoing is *Hicks v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975) (overruled on other grounds). In *Hicks*, the Supreme Court held that even where state proceedings are begun *after* a federal complaint is filed, but before any proceeding of substance on the merits have taken place in federal court, the principles of *Younger* apply with full force. *See id.* at 349, 95

S.Ct. 2281. Applying *Hicks* to the instant case, even if the May 21, 1997 CPUC decision was final as CTS contends, CTS initiated a "second" state proceeding on June 10, 1997 (by filing a petition for rehearing) *after* their federal complaint was filed (on May 22, 1997), but before the district court had done anything of substance concerning its merits. Hence, following the *Hicks* analysis, the *Younger* doctrine applies.

### 2. The CPUC Proceedings Were Not Preempted.

■ Rather than attempt to challenge the validity of the state interests at stake before the CPUC, CTS argues that any such interests are obviated because preemption of the CPUC's actions by federal law is "readily apparent." *Gartrell Const. Inc. v. Aubry*, 940 F.2d 437, 441 (9th Cir. 1991). CTS does not allege that the CPUC's imposition of fines and other penalties is unlawful, but that the CPUC's three-year suspension of CTS' intrastate operations is preempted by § 253(a) of the Act. The argument misses an important point.

Section 253(a) of the Act does contain an explicit preemption provision: "No State or local statute or regulation, or other ... legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." Section 253(b) then states, however, that "[n]othing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with section 254 of this section, requirements necessary to ... protect the public safety and welfare ... and safeguard the rights of consumers." As noted earlier, CTS contends that, because the CPUC had deprived it of its ability to engage in slamming,[3] the three-year suspension on providing long-distance services was not

---

**3.** *See Interim Order,* 1997 WL 178856 (Cal. P.U.C. Mar.18, 1997) (Decision No. 97–03– 053).

"necessary to ... safeguard the rights of consumers" and therefore trespasses into federal territory.

The United States Supreme Court and the Ninth Circuit have held that federal preemption of state regulation in the area of telecommunications must be clear and occurs only in limited circumstances. *See Louisiana Pub. Serv. Com'n v. FCC*, 476 U.S. 355, 368–69, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986); *California v. FCC*, 905 F.2d 1217, 1243 (9th Cir.1990). Under *Younger*, state action may be preempted only for conduct that is " 'flagrantly and patently' violative of the constitution," i.e., preemption must be "readily apparent." *Fresh Int'l*, 805 F.2d at 1361 n. 12 (quoting *Younger*, 401 U.S. at 54, 91 S.Ct. 746).

CTS' preemption argument misinterprets the purpose of the Act and ignores the important state interests at issue here. The Act was designed to prevent explicit prohibitions on entry by a utility into telecommunications, and thereby to protect competition in the industry while allowing states to regulate to protect consumers against unfair business practices such as slamming. *See* Joint Explanatory Statement of the Committee of Conference, Cong. Rec. H1078, H1111 (Jan. 31, 1996). As the Supreme Court has held; "the regulation of utilities is one of the most important of the functions traditionally associated with the police power of the States." *Arkansas Elec. Coop. Corp. v. Arkansas Pub. Serv. Comm'n*, 461 U.S. 375, 377, 103 S.Ct. 1905, 76 L.Ed.2d 1 (1983). Among the important state interests at issue here are the protection of consumers from unfair business practices, the compensation of those consumers for harm, and the need to ensure fair competition between, and the fitness to operate of, licensed carriers. *See Hirsh v. Supreme Court*, 67 F.3d 708, 712–13 (9th Cir.1995) (quoting *Middlesex*, 457 U.S. at 434, 102 S.Ct. 2515).

The CPUC's actions in fining and temporarily suspending CTS from providing long-distance service serve the very purpose specified in § 253(b) of the Act and are not "flagrantly and patently" violative of the Constitution. The CPUC has the power to implement regulations that are "necessary" to "protect the public" against slamming, which reasonably may include fines or suspensions needed to prevent such unlawful activity. Under CTS' analysis of "necessary," a freeze on slamming would be the only action permitted. CTS ignores the reality that fines or suspensions may be required to prevent and deter illegal behavior. More crucially, as the CPUC points out, the suspension handed down against CTS need not be necessary to prevent CTS' slamming; rather, it need only be necessary to serve the interests recognized in § 253(b) of protecting the public welfare.

Hence, the Act does not preempt the sanctions handed down against CTS by the CPUC. The sanctions advanced important state interests and thus were not "flagrantly and patently" violative of the Constitution.

### 3. *CTS 2 is Barred by Claim Preclusion.*

■ Because the third prong of *Younger* ("adequate opportunity" to raise federal claims) is closely related to the res judicata issue raised in *CTS 2*, this final point will be considered after the claim preclusion discussion at issue in *CTS 2*. In *CTS 2*, the district court concluded that CTS' federal claims were barred by res judicata because CTS had an adequate opportunity to litigate the claims in the state proceedings.

■ Res judicata, or claim preclusion, bars claims that should have been raised and resolved in earlier litigation between the same parties. Generally, a claim is barred under this doctrine if the earlier litigation: (1) concerned the same claim as the current action, (2) reached final judgment on the merits, and (3) involved the same parties. *See Nordhorn v. Ladish Co.*, 9 F.3d 1402, 1404 (9th Cir.1993).

■ By statute, state court judgments are accorded the same preclusive effect in federal courts as they are given in the courts of that state. *See* 28 U.S.C. § 1738. Under federal common law, quasi-judicial state administrative proceedings are treated similarly. *See University of Tennessee v. Elliott,* 478 U.S. 788, 799, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) (holding that state administrative fact-finding is given the same preclusive effect as it is given by state courts); *Guild Wineries & Distilleries v. Whitehall Co.,* 853 F.2d 755, 758 (9th Cir.1988) (recognizing 9th Circuit's extension of *Elliott* to legal conclusions of state administrative proceedings).

■ The Due Process Clause places some limits on the doctrine of res judicata; only proceedings that meet the minimal requirements of due process are accorded preclusive effect. *See Kremer v. Chemical Const. Corp.,* 456 U.S. 461, 483–85, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). A state proceeding that does not provide a party a " 'full and fair opportunity' to litigate the claim" does not qualify. *Id.* at 480–81, 102 S.Ct. 1883; *see also Elliott,* 478 U.S. at 799, 106 S.Ct. 3220. We have recently held that a state administrative procedure provides a "full and fair opportunity" to litigate only if it includes some form of judicial review. *See Wehrli v. County of Orange,* 175 F.3d 692, 693 (9th Cir.1999).

CTS does not dispute that the state proceedings involved the same parties and the same claim. CTS argues, however, that the state proceedings cannot be considered res judicata given the history of summary rejections of review by the California Supreme Court. It is not clear whether CTS is arguing that there was no final decision on the merits for res judicata purposes or instead, that the California Supreme Court's procedures did not meet the minimal requirements of due process. In either case, CTS' argument is unpersuasive. There was a final decision on the merits, and minimal requirements were met.

■ Until this year, the only judicial review of CPUC decisions was through a petition for a writ of review to the California Supreme Court. *See* Cal. Pub. Util. Code § 1756 (1998). CTS filed such a petition but declined to include its federal claims. The petition was denied in a one-line order. *See CTS v. CPUC,* 1997 Cal. LEXIS 8656 (Cal. Dec. 23, 1997). Under California law, the California Supreme Court's summary denial is a final decision on the merits with res judicata effect. *See Consumers Lobby Against Monopolies v. CPUC,* 25 Cal.3d 891, 901, 905, 160 Cal. Rptr. 124, 603 P.2d 41 (1979). Section 1738 thus requires this court to accord the denial the same res judicata effect and to affirm the dismissal in *CTS 2. See* 28 U.S.C. § 1738.

CTS argues that the denial should not be considered res judicata because the California Supreme Court did not provide it a "full and fair opportunity" to litigate its claims. CTS contends that no meaningful review in the California Supreme Court was available because the Court grants only a small portion of civil writs for review, 4% in 1996–97. CTS claims that only one petition for review of a CPUC decision has been granted out of 79 filed since 1990, effectively rendering it futile to bring its federal claims in the state courts. CTS also alleges that every other state in the Union provides mandatory judicial review of public utility commission decisions. California now provides for appeal of CPUC decisions to the California Courts of Appeal. *See* Cal. Pub. Util.Code § 1756 (1999).

Although this court is familiar with the futility argument, CTS fails to recognize that summary denials by the California Supreme Court of petitions for review of CPUC decisions have long been accorded preclusive effect by the federal courts. *See, e.g., Napa Valley Elec. Co. v. Board of R.R. Comm'rs of Cal.,* 251 U.S. 366, 372–73, 40 S.Ct. 174, 64 L.Ed. 310 (1920) (recognizing res judicata effect of denial of review of Board's rate-making; Board was

predecessor of the CPUC); *Pacific Tel. & Tel. Co. v. CPUC*, 600 F.2d 1309, 1314 (9th Cir.1979) (affirming continued vitality of *Napa Valley* ); *Jackson Water Works, Inc. v. CPUC*, 793 F.2d 1090, 1097 (9th Cir. 1986) (following *Pacific Tel. & Tel.*).

 These decisions are not surprising. Unlike the United States Supreme Court's denials of petitions for certiorari, the California Supreme Court has no discretion to refuse to consider petitions for review of CPUC decisions. *See Consumers Lobby*, 25 Cal.3d at 901 n. 3, 160 Cal. Rptr. 124, 603 P.2d 41 (distinguishing mandatory review of CPUC decisions with discretionary writs of prohibition and mandate). The California Supreme Court has only the discretion to deny oral argument and a written opinion. The summary denials thus are similar to the Supreme Court's summary denials of review of state court decisions. Those denials are on the merits and have preclusive effect, despite the lack of oral argument or a written opinion. *See Boggs v. Boggs*, 520 U.S. 833, 849, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997). This circuit also resolves, on occasion, appeals in one-line unpublished dispositions without oral argument. Such decisions are on the merits and have res judicata effect. *See* 9th Cir. R. 36–3. In any event, CTS will not be heard to criticize the California Supreme Court's refusal to consider its federal claims when CTS failed to present its federal claims to that court. That court may well have taken a second look had it been presented with the federal claims. CTS' statistics do not indicate the frequency with which writs of review are granted in cases raising important federal claims.

CTS further attempts to rely on *UPS v. CPUC*, 77 F.3d 1178 (9th Cir.1996). CTS claims that the Ninth Circuit reversed course in that case and held that summary denials of review by the California Supreme Court are inadequate for res judicata purposes. While *UPS* does express "serious reservations" regarding the adequacy of California's review procedures, those reservations were by way of dicta.

*See UPS*, 77 F.3d at 1188. The *UPS* discussion of the "full and fair" opportunity to litigate before the California Supreme Court applies only to the analysis of whether UPS' *England* reservation should be honored despite UPS' failure to file its federal action before filing the state action. *UPS* recognized "the affirmation granted this state practice by the Supreme Court and by this court" and explicitly declined to consider any issues of res judicata. *Id.*

Further, to the extent that CTS cites *UPS* for its liberal interpretation of *England* reservations, *UPS* is irrelevant. The *UPS* court recognized that *England* reservations do not apply in the *Younger* context. *See UPS*, 77 F.3d at 1188 n. 5. Because the state proceeding in *UPS* was a quasi-legislative rate-making, *Younger* abstention could not apply, and an *England* reservation was appropriate. *See id.* In the instant case, CTS made no *England* reservation in its petition to the California Supreme Court and thus cannot rely on *UPS*.

This court is bound to follow earlier Ninth Circuit and Supreme Court precedent rather than any dicta in *UPS*. The decision of the district court, concluding that CTS' federal claims were barred by res judicata, is affirmed.

### 4. CTS Had an Adequate Opportunity to Present Its Federal Claims in the State Proceedings.

 The third prong of the *Younger* analysis asks whether the plaintiff has or had an "adequate" or "full and fair" opportunity to raise its federal claims in the state proceedings. *See Moore v. Sims*, 442 U.S. 415, 431 n. 12, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). The federal issues need not, of course, have been actually litigated in the state proceedings. In fact, the Supreme Court has suggested that a plaintiff's failure to raise its federal claims in the state proceedings favors *Younger* abstention. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) ("[W]hen a litigant has

not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.").

 The "adequate opportunity" prong of *Younger* is no more difficult to satisfy than the res judicata test. *Younger* requires only the absence of "procedural bars" to raising a federal claim in the state proceedings. *See, e.g., Middlesex,* 457 U.S. at 432, 102 S.Ct. 2515 ("[A] federal court should abstain 'unless state law clearly bars the interposition of the constitutional claims.'") (quoting *Moore,* 442 U.S. at 426, 99 S.Ct. 2371); *Dubinka,* 23 F.3d at 224 (9th Cir.1994) (applying *Younger* even though state courts are compelled to reject a federal constitutional claim under state precedent; relying on absence of *procedural* bar to raising the claim). CTS has the burden of showing "that state procedural law barred presentation of [its] claims." *Pennzoil,* 481 U.S. at 14, 107 S.Ct. 1519. CTS has not met this burden.

CTS does not dispute that it could have presented its federal claims to the California Supreme Court but argues only that that opportunity was inadequate because of the court's practice of summarily denying petitions for review of CPUC decisions. CTS' argument is unpersuasive for the reasons discussed in Part III, subsection 3. If the California Supreme Court's denial suffices for res judicata purposes, then, by definition, the denial must provide a "full and fair" opportunity for parties to litigate their claims. *Younger* requires no more. The decisions of the district court in *CTS 1* and *CTS 2* are

**AFFIRMED.**

